Orin Snyder (*pro hac vice*)
  osnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Kristin A. Linsley (SBN 154148)
  klinsley@gibsondunn.com
Brian M. Lutz (SBN 255976)
  blutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

Joshua S. Lipshutz (SBN 242557)
  jlipshutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539

Paul J. Collins (SBN 187709)
  pcollins@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Telephone:  650.849.5300
Facsimile:  650.849.5333

*Attorneys for Nominal Defendant Facebook, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE FACEBOOK, INC. SHAREHOLDER DERIVATIVE PRIVACY LITIGATION<br><br><br><br>This Document Relates To:<br><br>ALL ACTIONS | LEAD CASE NO. 4:18-CV-01792-HSG<br><br>ASSOCIATED CASES: NOS. 4:18-CV-01834-HSG, 4:18-CV-01893-HSG, 4:18-CV-01929-HSG, 4:18-CV-02011-HSG<br><br>**FACEBOOK, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED SHAREHOLDER DERIVATIVE COMPLAINT ON *FORUM NON CONVENIENS* GROUNDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Hearing:**<br>Date:       November 15, 2018<br>Time:       2:00 P.M.<br>Location:  Courtroom 2, 4th Floor<br>Judge:      Hon. Haywood S. Gilliam, Jr.<br><br>Date First Action Filed: March 22, 2018 |

Gibson, Dunn &
Crutcher LLP

1

2

# TABLE OF CONTENTS

3
**Page**

4
MEMORANDUM OF POINTS AND AUTHORITIES .................................................... 1

5
STATEMENT OF ISSUES TO BE DECIDED ................................................................ 1

6
I.      PRELIMINARY STATEMENT .......................................................................... 2

7
II.     FACTUAL AND PROCEDURAL BACKGROUND ............................................ 3

8
III.    LEGAL STANDARD .......................................................................................... 5

9
IV.     ARGUMENT ....................................................................................................... 6

10
       A.      The Court Should Enforce Facebook's Exclusive Forum Provision And
            Dismiss This Action. ............................................................................... 6

11

12
           1.      Facebook's Governing Documents Contain A Mandatory And
                Exclusive Forum Selection Provision That Squarely Applies To This
                Case. ............................................................................... 7

13

14
           2.      Facebook's Exclusive Forum Provision Is Prima Facie Valid. ......................... 8

           3.      Facebook's Exclusive Forum Provision Is Enforceable As Applied. ............. 10

15

16
       B.      The Public Interest Factors Weigh In Favor Of Enforcing The Exclusive
            Forum Provision. ............................................................................... 13

17
       C.      Plaintiffs Cannot Avoid The Exclusive Forum Provision By Pleading Baseless
            Securities Law Claims. ............................................................................... 15

18
V.      CONCLUSION ............................................................................................... 16

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Adema Techs. Inc. v. Wacker Chemie AG*,

5
    2014 WL 3615799 (N.D. Cal. July 22, 2014)..................................................................6

6

*Argueta v. Banco Mexicano, S.A.*,
    87 F.3d 320 (9th Cir. 1996)........................................................5, 6, 10, 11, 12

7

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*,

8
    571 U.S. 49 (2013) ..........................................................3, 5, 6, 13, 14, 15

9

*Billard v. Angrick*,

10
    220 F. Supp. 3d 132 (D.D.C. 2016) ..........................................................9

11

*Boilermakers Local 154 Ret. Fund v. Chevron Corp.*,
    73 A.3d 934 (Del. Ch. 2013)........................................3, 5, 7, 8, 9, 10, 11, 13

12

*Centaur Partners, IV v. Nat'l Intergroup, Inc.*,

13
    582 A.2d 923 (Del. 1990) ..........................................................10

14

*Crede CG III, Ltd. v. 22nd Century Group, Inc.*,

15
    2017 WL 280818 (S.D.N.Y. Jan. 20, 2017)..........................................................16

16

*Docksider, Ltd., v. Sea Tech., Ltd.*,
    875 F.2d 762 (9th Cir. 1989)..........................................................8

17

*Dreiling v. Am. Express Co.*,

18
    458 F.3d 942 (9th Cir. 2006)..........................................................7

19

*Europe & Overseas Commodity Traders, S.A. v. Banque Paribas London*,

20
    940 F. Supp. 528 (S.D.N.Y. 1996)..........................................................15

21

*Fasano v. Juoqing Li*,
    2017 WL 6764692 (S.D.N.Y. Dec. 29, 2017) ..........................................................15

22

*Fraser v. Brightstar Franchising LLC*,

23
    2016 WL 4269869 (N.D. Cal. Aug. 15, 2016)..........................................................14

24

*Galaviz v. Berg*,
    763 F. Supp. 2d 1170 (N.D. Cal. 2011) ..........................................................10

25

*In re Air Crash Over Taiwan Straits on May 25, 2002*,

26
    331 F. Supp. 2d 1176 (C.D. Cal. 2004) ..........................................................15

27

*In re Countrywide Fin. Corp. Deriv. Litig.*,

28
    542 F. Supp. 2d 1160 (C.D. Cal. 2008) ..........................................................13, 14

*In re: CytRx Corp. S'holder Deriv. Litig.*,
  2015 WL 9871275 (C.D. Cal. Oct. 30, 2015) .........................................................5, 6, 9, 10, 12, 14

*In re Plains All Am. Deriv. Litig.*,
  2016 WL 6634929 (S.D. Tex. Nov. 8, 2016) ................................................................................9

*In re Rolls Royce Corp.*,
  775 F.3d 671 (5th Cir. 2014) ....................................................................................................16

*In re Sagent Tech., Inc., Deriv. Litig*,
  278 F. Supp. 2d 1079 (N.D. Cal. 2003) ......................................................................................8

*In re STEC, Inc. Deriv. Litig.*,
  2012 WL 8978155 (C.D. Cal. 2012) .........................................................................................17

*In re Verisign, Inc., Deriv. Litig.*,
  531 F. Supp. 2d 1173 (N.D. Cal. 2007) ..............................................................................12, 14

*In re Wells Fargo & Co. S'holder Deriv. Litig.*,
  282 F. Supp. 3d 1074 (N.D. Cal. 2017) ......................................................................................8

*In re Yahoo! Inc. S'holder Deriv. Litig.*,
  153 F. Supp. 3d 1107 (N.D. Cal. 2015) ......................................................................................7

*Kidsco Inc. v. Dinsmore*,
  674 A.2d 483 (Del. Ch. 1995) ..................................................................................................10

*Knopf v. Semel*,
  2010 WL 965308 (N.D. Cal. Mar. 17, 2010) ..............................................................................7

*M/S Bremen v. Zapata Off-Shore Co.*,
  407 U.S. 1 (1972) ...............................................................................................................5, 8, 10

*Monastiero, v. appMobi, Inc.*,
  2014 WL 1991564 (N.D. Cal. May 15, 2014) .............................................................................6

*Moretti v. Hertz Corp.*,
  2014 WL 1410432 (N.D. Cal. Apr. 11, 2014) ...........................................................................14

*Murphy v. Schneider Nat'l, Inc.*,
  362 F.3d 1133 (9th Cir. 2004) ..................................................................................................10

*North v. McNamara*,
  47 F. Supp. 3d 635 (S.D. Ohio 2014) ............................................................................9, 10, 13

*Otor, S.A. v. Credit Lyonnais, S.A.*,
  2006 WL 2613775 (S.D.N.Y. Sept. 11, 2006) ..........................................................................15

*Rowen v. Soundview Commc'ns, Inc.*,
  2015 WL 899294 (N.D. Cal. Mar. 2, 2015) ...............................................................................14

Gibson, Dunn &
Crutcher LLP

*Stevenot v. Norberg*,
210 F.2d 615 (9th Cir. 1954)...........................................................................................10

*Stewart Organization, Inc. v. Ricoh Corp.*,
487 U.S. 22 (1988)...........................................................................................................13

**Statutes**

8 Del. C. § 115 ............................................................................................................................8, 11

**Rules**

Fed. R. Civ. P. 21 ...........................................................................................................................16

Gibson, Dunn &
Crutcher LLP

MOTION TO DISMISS ON *FORUM NON CONVENIENS* GROUNDS
LEAD CASE NO. 4:18-CV-01792-HSG

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 15, 2018 at 2:00 p.m., or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, Oakland Courthouse, Courtroom 2, located at 1301 Clay Street, Oakland, CA 94612, Nominal Defendant Facebook, Inc. ("Facebook" or the "Company"), through its undersigned counsel, will, and hereby does, move to dismiss the Consolidated Shareholder Derivative Complaint ("Complaint" or "Compl.") on grounds of *forum non conveniens*.

Facebook seeks dismissal of the Complaint on *forum non conveniens* grounds.  This Motion is based on this Notice, the supporting Memorandum of Points and Authorities, the Declaration of Brian M. Lutz filed concurrently herewith, the accompanying Request for Judicial Notice, the complete files and records in this action, and any additional material and arguments as may be considered in connection with the hearing.

Through this Motion and the Motions to Dismiss or Stay filed concurrently herewith, Facebook respectfully requests this Court to consider and grant the Motions as follows: (i) dismiss this action pursuant to Federal Rule of Civil Procedure 23.1 for failure to make a demand on the board or adequately plead demand futility; (ii) dismiss this action on *forum non conveniens* grounds, with a related order dismissing Plaintiffs' federal securities law claims for failure to state a claim or severing the federal securities claims and staying them; (iii) dismiss all of the claims in this action for failure to state a claim and because they are unripe; and (iv) stay this action pending resolution of the civil actions and FTC Investigation that form the basis for Plaintiffs' claims.

## MEMORANDUM OF POINTS AND AUTHORITIES

Facebook respectfully submits this Memorandum of Points and Authorities, together with the Declaration of Brian M. Lutz and attached exhibits, in support of its Motion to Dismiss on *Forum Non Conveniens* Grounds.

## STATEMENT OF ISSUES TO BE DECIDED

Whether the Court should dismiss Plaintiffs' Complaint on *forum non conveniens* grounds in light of the provision in Facebook's Restated Certificate of Incorporation (the "Certificate")

Gibson, Dunn &
Crutcher LLP

designating the Court of Chancery of the State of Delaware (the "Delaware Court of Chancery") as "the **sole and exclusive forum** for (1) any derivative action or proceeding brought on behalf of the corporation, (2) any action asserting a claim of breach of a fiduciary duty owed by, or other wrongdoing by, any director, officer, employee or agent of the corporation to the corporation or the corporation's stockholders, … or (5) any action asserting a claim governed by the internal affairs doctrine."

## I.   PRELIMINARY STATEMENT

Facebook's corporate charter designates the Delaware Court of Chancery as the exclusive forum for litigating cases like this one—a derivative lawsuit brought on behalf of Facebook claiming that the Company's directors breached their fiduciary duties and committed other violations of Delaware law.  For this reason, this derivative action should be dismissed on *forum non conveniens* grounds.  If Plaintiffs wish to litigate this derivative lawsuit, they are required under the Company's exclusive forum provision to do so in the Delaware Court of Chancery, where a parallel shareholder derivative lawsuit arising out of the same allegations and against the same defendants as this case is pending.

In 2012, before Facebook became a publicly traded company, Facebook's Board of Directors adopted a provision in the Company's Certificate of Incorporation designating the Delaware Court of Chancery as the "sole and exclusive forum" for litigating certain kinds of disputes involving the Company and its directors.  The provision states that, unless Facebook decides not to enforce the provision, the Delaware Court of Chancery is the exclusive forum for adjudicating "(1) any derivative action or proceeding brought on behalf of the corporation, (2) any action asserting a claim of breach of a fiduciary duty owed by, or other wrongdoing by, any director, officer, employee or agent of the corporation to the corporation or the corporation's stockholders, … or (5) any action asserting a claim governed by the internal affairs doctrine." (Lutz Ex. 9).[1]  Delaware law expressly authorizes exclusive forum provisions of this type, in recognition that such provisions in a corporation's charter or bylaws constitute a facially valid and binding contractual relationship between a corporation and its

---

[1] Citations to "Lutz Ex." refer to the exhibits to the Declaration of Brian M. Lutz ("Lutz Decl."), filed concurrently herewith.

Gibson, Dunn &
Crutcher LLP

shareholders. *See Boilermakers Local 154 Ret. Fund v. Chevron Corp.*, 73 A.3d 934, 940 (Del. Ch. 2013) ("[A] forum selection clause adopted by a board with the authority to adopt bylaws is valid and enforceable under Delaware law to the same extent as other contractual forum selection clauses."). Thus, Facebook's binding exclusive forum provision controls and requires dismissal. *See Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013) (exclusive forum provisions "should be given controlling weight in all but the most exceptional cases") (citation omitted).

Under the modified *forum non conveniens* framework that applies where, as here, the parties are subject to an exclusive forum provision, the applicable factors favor dismissal of this action. Under this analysis, Plaintiffs bear the burden of demonstrating that public-interest factors, which "rarely" defeat an exclusive forum provision, "overwhelmingly" favor litigating in Plaintiffs' chosen forum. *Id. Atl. Marine*, 571 U.S. at 64, 67. Plaintiffs cannot come close to making that showing here. If anything, the public interest in having Delaware courts adjudicate Delaware law disputes and avoiding parallel litigation of the same issues in two jurisdictions weighs in favor of enforcement of the exclusive forum provision and dismissal of this action. And, Plaintiffs' deficient federal securities law claims—which Plaintiffs no doubt tacked onto their complaint in an effort to circumvent the exclusive forum provision—must be dismissed pursuant to the concurrently filed Rule 12(b)(6) Motion or severed from the state law claims and stayed pursuant to the concurrently filed Motion to Stay. Those federal claims thus provide no basis for allowing this case to proceed in this District. Plaintiffs cannot meet their burden of demonstrating that this is one of the "exceptional" and "unusual" cases where a court should decline to enforce a valid exclusive forum provision. *Id.* at 63, 66.

This motion, in sum, requests nothing more than a straightforward application of Facebook's exclusive forum provision so that this litigation may proceed in the Delaware Court of Chancery, where virtually the same lawsuit is already underway. This Court should dismiss this case on *forum non conveniens* grounds.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Facebook is a Delaware corporation that has been listed on NASDAQ since May 18, 2012. (Lutz Ex. 12). Facebook's Certificate contains an exclusive forum provision (the "Exclusive Forum Provision"), which provides that:

> Unless the corporation consents in writing to the selection of an alternative forum, the Court of Chancery of the State of Delaware shall, to the fullest extent permitted by law, be the **sole and exclusive forum** for (1) any derivative action or proceeding brought on behalf of the corporation, (2) any action asserting a claim of breach of a fiduciary duty owed by, or other wrongdoing by, any director, officer, employee or agent of the corporation to the corporation or the corporation's stockholders, … or (5) any action asserting a claim governed by the internal affairs doctrine.

By its terms, and as this Court has recognized, "[t]he right to enforce this clause belongs to Facebook alone." ECF 67, at 3. Facebook's Certificate also states that all Facebook shareholders "shall be deemed to have notice of and consented to the provisions of" the Exclusive Forum Provision. (Lutz Ex. 9). Prior to its initial public offering, Facebook publicly disclosed the form of its Restated Certificate of Incorporation in an amendment to its Registration Statement on Form S-1/A, which was filed with the SEC on April 23, 2012. (*See* Facebook, Amendment No. 4 to Registration Statement (Form S-1/A) at Ex. 3.3 (Apr. 23, 2012) (attached as Lutz Ex. 8)). Facebook formally Restated its Certificate of Incorporation on May 22, 2012, and on July 31, 2012, Facebook publicly filed the Restated Certificate of Incorporation as an exhibit to its Quarterly Report on Form 10-Q. (Lutz Ex. 9).

This litigation followed the publication of two articles on March 17, 2018, by *The New York Times* and *The Guardian* regarding the misappropriation and misuse of Facebook user data by the now-bankrupt entity Cambridge Analytica. In the following weeks, five purported shareholders of Facebook filed substantially similar shareholder derivative class actions in the Northern District of California alleging that certain of Facebook's officers and directors breached duties owed to Facebook and its shareholders by failing to ensure that Facebook had implemented sufficient controls to prevent and notify Facebook users of Cambridge Analytica's data misuse.

On June 27, 2018, this Court issued an order consolidating the five separate actions into a single action. ECF 52. On July 2, 2018, Plaintiffs filed the operative Complaint. The Complaint purports to bring, on behalf of Facebook, seven derivative claims against the members of the Facebook Board of Directors for (i) violation of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"); (ii) violation of Section 10(b) of the Exchange Act; (iii) misappropriation and breach of fiduciary duty for insider trading; (iv) violation of Sections 25402 and 25403 of the California Corporations Code; (v) breach of fiduciary duty; (vi) contribution and indemnification; and (vii) aiding and abetting breach of fiduciary duty.

In addition to this action, a separate and substantially similar shareholder derivative case is proceeding in the Delaware Court of Chancery.  That case, captioned *Sbriglio v. Zuckerberg, et. al.*, is a derivative action purportedly brought on behalf of Facebook, against the same Facebook directors who are named as defendants in this action, and based on the same allegations as this case.  On August 3, 2018, the plaintiff in the *Sbriglio* action filed a consolidated amended complaint.  Amended Complaint, *Sbriglio v. Zuckerberg*, C.A. No. 2018-0307-JRS (Del. Ch. Aug. 3, 2018).  In addition, on July 23, 2018, another Facebook shareholder filed a lawsuit in the Delaware Court of Chancery seeking to inspect the Company's books and records pursuant to Section 220 of the Delaware General Corporation Law ("DGCL").  Both of these actions are proceeding before Vice Chancellor Slights of the Delaware Court of Chancery.

## III.   LEGAL STANDARD

A forum selection clause in a corporation's governing documents constitutes a contract between a corporation and its shareholders, *Boilermakers*, 73 A.3d at 955-57, and enforcement of such a provision is treated the same as any contractual forum selection provision.  *See In re: CytRx Corp. S'holder Deriv. Litig.*, 2015 WL 9871275, at *2-4 (C.D. Cal. Oct. 30, 2015).  "[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*."  *Atl. Marine*, 571 U.S. at 60.  A court must first determine whether the exclusive forum provision is facially valid and valid as applied.  The burden is on the plaintiff to establish that enforcement would be "unreasonable under the circumstances."  *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)).  An exclusive forum provision "should be given controlling weight in all but the most exceptional cases," *Atl. Marine*, 571 U.S. at 63, and is unreasonable only if:

> (1) its incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power; (2) the selected forum is so gravely difficult and inconvenient that the complaining party will for all practical purposes be deprived of its day in court; or (3) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought.

*Argueta*, 87 F.3d at 325 (internal quotation marks and citations omitted).

Where, as here, there is a valid exclusive forum provision, the court must apply a modified version of the traditional *forum non conveniens* analysis.  *Atl. Marine*, 571 U.S. at 64.  First, "the

plaintiff's choice of forum merits *no* weight." *Id.* at 63 (emphasis added). Rather, the plaintiff "bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* Second, the court "must deem the private-interest factors"—like the convenience of the parties—" to weigh entirely in favor of the preselected forum" because, by agreeing to the forum selection clause, the parties waive any right to challenge the preselected forum as less convenient. *Id.* at 64. The district court may therefore consider *only* public-interest factors—including administrative difficulties from court congestion, the interest in having localized controversies decided at home, and the interest of having a diversity cases decided in a forum that is at home with the law—which "rarely defeat a transfer motion." *Id.* "The practical result is that forum-selection clauses should control except in unusual cases." *Id.*

## IV.   ARGUMENT

### A.   The Court Should Enforce Facebook's Exclusive Forum Provision And Dismiss This Action.

The Exclusive Forum Provision is valid, enforceable, and requires dismissal of this case under well-settled federal and Delaware law.[2] *See Atl. Marine*, 571 U.S. at 63 ("[A] valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases."); *Monastiero, v. appMobi, Inc.*, 2014 WL 1991564, at *3 (N.D. Cal. May 15, 2014) ("In all but the most unusual cases … 'the interest of justice' is served by holding parties to their bargain."); *Adema Techs. Inc. v. Wacker Chemie AG*, 2014 WL 3615799, at *2 (N.D. Cal. July 22, 2014) ("[W]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation") (internal quotation marks omitted); *Boilermakers Local 154 Ret. Fund v. Chevron Corp.*, 73 A.3d 934, 950-58 (Del. Ch. 2013) ("[T]his court will enforce the forum selection bylaws in the same way it enforces any other

---

[2]   Although federal law governs the *enforceability* of the Exclusive Forum Provision, Delaware law governs the *validity* of this clause. *See In re: CytRx Corp. S'holder Deriv. Litig.*, 2015 WL 9871275, at *2-3 (C.D. Cal. Oct. 30, 2015) (recognizing that federal courts "cannot make an intelligible decision about the validity of a Delaware corporation's forum-selection bylaw under federal law without understanding the contractual relationship Delaware law has assigned to the [p]arties").

forum selection clause, in accordance with the principles set down by the United States Supreme Court.").

### 1. Facebook's Governing Documents Contain A Mandatory And Exclusive Forum Selection Provision That Squarely Applies To This Case.

The Exclusive Forum Provision is a mandatory and exclusive forum selection provision requiring that *any* derivative action brought on behalf of the corporation, or that alleges breaches of fiduciary duties or claims relating to Facebook's internal controls, be brought in the Delaware Court of Chancery.[3] Specifically, the provision provides that:

> Unless the corporation consents in writing to the selection of an alternative forum, the Court of Chancery of the State of Delaware shall, to the fullest extent permitted by law, be the ***sole and exclusive forum*** for (1) any derivative action or proceeding brought on behalf of the corporation, (2) any action asserting a claim of breach of a fiduciary duty owed by, or other wrongdoing by, any director, officer, employee or agent of the corporation to the corporation or the corporation's stockholders, … or (5) any action asserting a claim governed by the internal affairs doctrine."

(Lutz Ex. 9 at Art. IX.) (emphasis added).

This action falls squarely into each of these categories.  First, this indisputably is a shareholder derivative action in which Plaintiffs seek to bring claims derivatively on behalf of Facebook.  (*See* Compl. 1 ("Plaintiffs … bring this action on Facebook's behalf …"); *id.* ¶ 15 ("Plaintiff Shareholders seek to recover *on behalf of Facebook* …")).  Second, Plaintiffs assert claims against certain of Facebook's directors and officers for alleged breaches of their fiduciary duties.  (*Id.* ¶¶ 473-477 (alleging breaches of fiduciary duty for insider trading); *id.* ¶¶ 488-502 (alleging breaches of fiduciary duty)).  Third, Plaintiffs bring claims that are governed by the internal affairs doctrine, under which the law of the state of incorporation (here, Delaware) governs the liabilities of directors to the corporation and its shareholders.  (*Id.* ¶¶ 473-477 (alleging misappropriation for insider trading); *id.* ¶¶ 478-487

---

[3] The Court may take judicial notice of the provisions of a nominal defendant's certificate of incorporation in a shareholder derivative suit.  *See Knopf v. Semel*, 2010 WL 965308, at *6 n.3 (N.D. Cal. Mar. 17, 2010) (taking "judicial notice of [defendant]'s certificate of incorporation as it is a document that is not subject to reasonable dispute and is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned") (internal quotation marks omitted); *In re Yahoo! Inc. S'holder Deriv. Litig.*, 153 F. Supp. 3d 1107, 1117 (N.D. Cal. 2015) ("[C]ourts routinely take judicial notice of certificates of incorporation when ruling on motions to dismiss in derivative actions.") (citing cases); *Dreiling v. Am. Express Co.*, 458 F.3d 942, 946, n.2 (9th Cir. 2006) (noting that the court may consider "any matter subject to judicial notice, such as SEC filings").

Gibson, Dunn &
Crutcher LLP

1   (alleging violations of Sections 25402 and 25403 of the California Corporations Code); *id.* ¶¶ 503-507

2   (alleging claims for contribution and indemnification); s*ee also In re Sagent Tech., Inc., Deriv. Litig.*,

3   278 F. Supp. 2d 1079, 1086 (N.D. Cal. 2003) (applying internal affairs doctrine)).   Moreover, not only

4   are Plaintiffs' claims under the California Corporations Code governed by the internal affairs doctrine

5   and therefore squarely within the Exclusive Forum Provision, the California Corporations Code does

6   not apply to Facebook, a Delaware corporation.  *In re Wells Fargo & Co. S'holder Deriv. Litig.*, 282

7   F. Supp. 3d 1074, 1111 (N.D. Cal. 2017) (dismissing with prejudice all claims brought under Section

8   25402 because the plaintiffs could not sustain California statutory insider trading claims against a

9   Delaware company); *In re Sagent*, 278 F. Supp. 2d at 1090-92 (dismissing insider trading claims

10   brought under Section 25402 because the claims related to a "violation of official duty" under the

11   internal affairs doctrine and must be governed by Delaware, not California law).

12   ### 2.   Facebook's Exclusive Forum Provision Is Prima Facie Valid.

13   Mandatory forum selection clauses, like the one in Facebook's Certificate, are prima facie valid

14   and enforceable.  *M/S Bremen*, 407 U.S. at 15; *Docksider, Ltd., v. Sea Tech., Ltd.*, 875 F.2d 762, 764

15   (9th Cir. 1989) (forum selection clause is presumptively valid if "venue is specified with mandatory

16   language").  A forum selection clause governing disputes relating to the internal affairs of a corporation

17   is statutorily and contractually valid, even when unilaterally adopted by the corporation's board of

18   directors.  *Boilermakers Local 154 Ret. Fund v. Chevron Corp.*, 73 A.3d 934, 950-58 (Del. Ch. 2013).

19   Such provisions—like the Exclusive Forum Provision here—are expressly authorized by

20   Delaware law, which governs the internal affairs of Delaware corporations like Facebook.  *See* 8 Del.

21   C. § 115 ("The certificate of incorporation or the bylaws may require, consistent with applicable

22   jurisdictional requirements, that any or all internal corporate claims shall be brought solely and

23   exclusively in any or all of the courts in this State …"); *see also* S.B. 75, 148th Gen. Assemb. (Del.

24   2015) (amending Title 8 of the DGCL to authorize forum selection clauses in corporate bylaws).  In

25   *Boilermakers*, the seminal case establishing the validity of forum selection clauses in corporate bylaws,

26   the Delaware Court of Chancery made clear that when shareholders purchase stock in a Delaware

27   corporation, they consent to unilaterally adopted forum selection provisions, and those provisions are

28   facially valid.  *See* 73 A.3d at 940 ("[A] forum selection clause adopted by a board with the authority

to adopt bylaws is valid and enforceable under Delaware law to the same extent as other contractual forum selection clauses.").

Federal courts, including courts in this Circuit, have consistently followed *Boilermakers* in upholding and enforcing forum selection provisions adopted by Delaware corporations. *See, e.g., In re: CytRx Corp.*, 2015 WL 9871275, at *7 (holding that shareholders could not proceed with fiduciary duty claims in federal court in light of forum selection bylaw requiring litigation of such claims in Delaware); *Billard v. Angrick*, 220 F. Supp. 3d 132, 143 (D.D.C. 2016) (holding that bylaw requiring litigation of derivative claims in Delaware Court of Chancery was valid, and dismissing case on *forum non conveniens* grounds); *see also North v. McNamara*, 47 F. Supp. 3d 635, 644 (S.D. Ohio 2014) (enforcing Delaware forum selection bylaw and dismissing case); *In re Plains All Am. Deriv. Litig.*, 2016 WL 6634929, at *4 (S.D. Tex. Nov. 8, 2016) (same).  Unsurprisingly, forum selection provisions like the one in Facebook's Certificate have become a common feature in corporations' governing documents. *See Boilermakers*, 73 A.3d at 944 (noting that in the prior three years, "over 250 publicly traded corporations have adopted such provisions").

Facebook's Exclusive Forum Provision, like the one in *Boilermakers* and countless others that have been enforced by courts across the country, requires dismissal of this case.  The provision is "part of an inherently flexible contract" between Facebook and its shareholders.[4]  *Boilermakers*, 73 A.3d at 957; *see also Stevenot v. Norberg*, 210 F.2d 615, 618 (9th Cir. 1954) (noting that "the Corporate Charter, the Articles of Incorporation, the By-laws, and the pertinent statutes of the state of incorporation" create a contractual relationship between a corporation and its shareholders); *Galaviz v. Berg*, 763 F. Supp. 2d 1170, 1174 (N.D. Cal. 2011) (acknowledging that under "principles of corporate law" "bylaws may generally be contractual in nature"); *Centaur Partners, IV v. Nat'l Intergroup, Inc.*, 582 A.2d 923, 928 (Del. 1990) ("Corporate charters and by-laws are contracts among the shareholders of a corporation and the general rules of contract interpretation are held to apply."); *Kidsco Inc. v.*

---

[4]  Although *Boilermakers* concerned a mandatory forum provision in a corporation's by-laws, the Delaware legislature later codified *Boilermakers*, amending the DGCL and making clear that such provisions are equally valid in Certificates of Incorporation.  S.B. 75, 148th Gen. Assemb. (Del. 2015) (amending Title 8 of the DGCL to provide that "[t]he certificate of incorporation or the bylaws [of a Delaware corporation] may require … that any or all internal corporate claims shall be brought solely and exclusively in any or all of the courts in this State").

Gibson, Dunn &
Crutcher LLP

1   *Dinsmore*, 674 A.2d 483, 492 (Del. Ch. 1995) (the bylaws of a Delaware corporation "are a contract

2   between the corporation and its stockholders").

3         Moreover, as owners of Facebook stock, Facebook shareholders were on notice that the

4   Facebook Board had the power to, and did, adopt the Exclusive Forum Provision.  Under Delaware

5   law, "[s]tockholders are on notice that … the board itself may act unilaterally to adopt bylaws

6   addressing those subjects" that are subject to regulation by bylaw.  *Boilermakers*, 73 A.3d at 955-56;

7   *see also In re: CytRX Corp.*, 2015 WL 9871275, at *4 (enforcing exclusive forum bylaw provision and

8   finding "mutual consent and notice exist" where board unilaterally adopted exclusive forum bylaw

9   provision); *North*, 47 F. Supp. 3d at 642 (enforcing exclusive forum bylaw provision and finding that

10   shareholders "consented to the Delaware corporate framework by buying shares in a Delaware

11   corporation and agreeing to the certificate of incorporation that allowed the board to unilaterally adopt

12   bylaws").  The Certificate even includes a provision expressly stating that by purchasing Facebook

13   stock, shareholders were on "notice of and consented to" the Exclusive Forum Provision.  (Lutz Ex. 9).

14   Accordingly, Plaintiffs are contractually bound by the terms set forth in the Certificate, including the

15   Exclusive Form Provision.

16             **3.**      **Facebook's Exclusive Forum Provision Is Enforceable As Applied.**

17         A party seeking to avoid enforcement of a facially valid forum selection clause must "clearly

18   show that enforcement would be unreasonable and unjust."  *M/S Bremen*, 407 U.S. at 15.  Courts have

19   construed this exception narrowly.  *Argueta*, 87 F.3d at 325; *see also Murphy v. Schneider Nat'l, Inc.*,

20   362 F.3d 1133, 1140 (9th Cir. 2004) ("Because forum selection clauses are presumptively valid, they

21   should be honored 'absent some compelling and countervailing reason.'") (citation omitted).  To

22   overcome the presumption in favor of enforcement of a forum selection clause, Plaintiffs bear a "heavy

23   burden" of demonstrating that the forum selection clause: (1) was the result of fraud, undue influence,

24   or overweening bargaining power; (2) the selected forum is so gravely difficult and inconvenient that

25   the complaining party will for all practical purposes be deprived of its day in court; or (3) enforcement

26   of the clause would contravene a strong public policy of the forum in which the suit is brought.

27   *Argueta*, 87 F.3d at 325 (internal quotation marks and citations omitted).

28

Here, Plaintiffs do not even address the Exclusive Forum Provision in their Complaint, much less plead facts sufficient to avoid its enforceability.  They cannot meet their "heavy burden" of demonstrating that the Exclusive Forum Provision is unreasonable or unjust.

        1)      Plaintiffs Cannot Meet Their Burden Of Showing That The Exclusive Forum Provision Was Procured By Fraud, Undue Influence, Or Overweening Bargaining Power.

Plaintiffs have not alleged, nor can they show, fraud, undue influence, or overweening bargaining power in Facebook's adoption of the Exclusive Forum Provision.  It is indisputable that Facebook had the authority to adopt a mandatory and exclusive forum selection provision in its governing corporate documents.  *See* 8 Del. C. § 115; *Boilermakers Local*, 73 A.3d at 950-58.  Moreover, the Exclusive Forum Provision was set forth in Facebook's form of Restated Certificate of Incorporation and publicly disclosed in the Company's Registration Statement prior to its IPO, putting all shareholders on notice of the provision.  (Lutz Ex. 8).  The Certificate even includes a provision expressly stating that by purchasing Facebook stock, shareholders were on "notice of and consented to" the Exclusive Forum Provision.  (*Id.*; *see also Boilermakers*, 73 A.3d at 955-56 ("Stockholders are on notice that, as to those subjects that are subject of regulation by bylaw under 8 Del. C. § 109(b), the board itself may act unilaterally to adopt bylaws addressing those subjects.")).  There simply can be no showing that the Facebook Board acted fraudulently, with undue influence, or with overweening bargaining power when, six years ago, the Board adopted a provision in the Company's Certificate that is expressly permitted under Delaware law.  Any suggestion to the contrary would be baseless.

        2)      Plaintiffs Cannot Meet Their Burden Of Showing That Delaware Is An Inconvenient Forum.

Plaintiffs also cannot meet their burden of showing that litigating in Delaware Court of Chancery will be "so gravely difficult and inconvenient" that "for all practical purposes," Plaintiffs will be "deprived [of their] day in court." *Argueta*, 87 F.3d at 325 (internal quotation marks and citation omitted).  Plaintiffs are residents of various states, so there is no magic to their choice of a California forum. *See, e.g.*, Compl. ¶ 24.  Upon the Court's dismissal of this action, Plaintiffs are free to refile their case in the Delaware Court of Chancery, where the substantially similar *Sbriglio* derivative case is pending.  "That evidence and witnesses may be located in California does not make the Delaware

Court of Chancery so inconvenient as to render the forum-selection clause unreasonable." *In re: CytRx Corp.*, 2015 WL 9871275, at *5 (granting motion to dismiss on *forum non conveniens* grounds and enforcing exclusive forum bylaw requiring derivative lawsuits to be litigated in Delaware Chancery Court).  Because the Delaware Court of Chancery is an adequate alternative forum, enforcing the Exclusive Forum Provision will not "for all practical purposes … depriv[e] [Plaintiffs their] day in court." *Argueta*, 87 F.3d at 325 (internal quotation marks and citation omitted).

> 3)     Plaintiffs Cannot Meet Their Burden Of Showing That The Exclusive Forum Provision Contravenes Public Policy.

The Exclusive Forum Provision also must be enforced because Plaintiffs cannot show that requiring them to litigate in the agreed-upon forum would "contravene a strong public policy" of California.  *Argueta*, 87 F.3d at 325.  No California public policy prohibits dismissal of this case and enforcement of the facially valid and binding Exclusive Forum Provision.  California federal courts recognize that "[u]nder the 'internal affairs' doctrine, the law of the state of incorporation governs liabilities of officers or directors to the corporation and its shareholders."  *In re Verisign, Inc., Deriv. Litig.*, 531 F. Supp. 2d 1173, 1214 (N.D. Cal. 2007) (citation omitted).  Facebook is incorporated in Delaware and Plaintiffs' non-federal claims—including the core breach of fiduciary duty claim—are governed by Delaware law.  *See id.* at 1215 (applying Delaware law to derivative claims against directors and officers of a Delaware corporation, including claims for breach of fiduciary duty, corporate waste, gross mismanagement, and unjust enrichment).  Dismissing this case in favor of the Delaware Court of Chancery—the court of the state whose substantive law governs this dispute, and which already has a case that presents the identical Delaware state law issues as this case—would not contravene any public policy.  To the contrary, dismissing this case under the Exclusive Forum Provision would reflect a proper recognition that the Delaware Court of Chancery has expertise in and is ideally suited to adjudicate the Delaware corporate law issues presented in this case. S*ee, e.g., In re Countrywide Fin. Corp. Deriv. Litig.*, 542 F. Supp. 2d 1160, 1173 (C.D. Cal. 2008) ("Thus, the Delaware Court of Chancery, which unquestionably has a well-recognized expertise in the field of state corporation law, is a particularly suitable forum to adjudicate those disputes." (internal quotation marks and citations omitted)).

If anything, enforcing the Exclusive Forum Provision would *further* public policy considerations by helping to avoid inefficient multi-forum derivative litigation and the risk of conflicting rulings on the same or similar issues.  *See e.g. Boilermakers*, 73 A.3d at 952 ("[F]orum selection bylaws are designed to bring order to … chaotic filing of duplicative and inefficient derivative and corporate suits against the directors and the corporations."); *North*, 47 F. Supp. 3d at 645 (recognizing "cost and efficiency benefits that inure to the corporation and its shareholders by streamlining litigation into a single forum").  Enforcing the Exclusive Forum Provision will contribute to the efficient resolution of all derivative litigation arising out of the Cambridge Analytica allegations—an objective Plaintiffs should desire given that they are duty bound to act in the best interest of Facebook, the Company they purport to represent in this action.  *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. at 33 ("[E]nforcement of valid forum-selection clauses … protects their legitimate expectations and furthers vital interests of the justice system.").

**B.      The Public Interest Factors Weigh In Favor Of Enforcing The Exclusive Forum Provision.**

The "public-interest" factors, which "rarely defeat" a motion to dismiss on *forum non conveniens* grounds, do not alter the application of the Exclusive Forum Provision here.  *Atl. Marine*, 571 U.S. at 64.  The public interest factors include:  (1) the "local interest in having localized controversies decided at home"; (2) the "interest in having the trial of a diversity case in a forum that is at home with the law"; and (3) "the administrative difficulties flowing from court congestion."  *Id.* at 62 n.6.  Plaintiffs "bear[] the burden of showing that public-interest factors *overwhelmingly* disfavor a transfer."  *Id*. at 63.  Plaintiffs cannot meet this heavy burden.  In fact, the public interest factors *support* enforcement of the Exclusive Forum Provision and dismissal of this case.

*First,* because Plaintiffs are Facebook shareholders residing in different states across the country who filed these actions purportedly on behalf of Facebook, a Delaware corporation, there is no particularized local interest in this controversy.  With the exception of their baseless Exchange Act claims, Plaintiffs' derivative claims involve the internal affairs of Facebook, which are governed by the Delaware law.  *See In re Verisign Deriv. Litig.*, 531 F. Supp. 2d 1173, 1214 (N.D. Cal. 2007) ("Under the 'internal affairs' doctrine, the law of the state of incorporation governs liabilities of officers

1   or directors to the corporation and its shareholders."). Although Facebook is headquartered in

2   California, that fact alone is insufficient to outweigh the presumption in favor of a Delaware forum.

3   *See Moretti v. Hertz Corp.*, 2014 WL 1410432, at *5 (N.D. Cal. Apr. 11, 2014) ("Although Hotwire's

4   residency [in California] weighs slightly in favor of California's interest, this is counterbalanced by the

5   fact that Hotwire is also a Delaware resident …"); *Rowen v. Soundview Commc'ns, Inc.*, 2015 WL

6   899294, at *7 (N.D. Cal. Mar. 2, 2015) (holding that California resident's "interest in having … dispute

7   settled in California" did "not make [it] an 'exceptional case' that defeats application of a valid forum

8   selection clause"); *In re: CytRx Corp.*, 2015 WL 9871275, at *6 (dismissing case on *forum non*

9   *conveniens* grounds even though the nominal defendant, a Delaware corporation, was headquartered in

10  California). In fact, any purported burden on Plaintiffs of litigating in Delaware is a "private-interest

11  concern[] that … may not be considered in analyzing whether [the] forum selection clause is

12  reasonable." *Fraser v. Brightstar Franchising LLC*, 2016 WL 4269869, at *5 (N.D. Cal. Aug. 15,

13  2016) (internal quotations omitted).

14       *Second*, as explained above, the Delaware Court of Chancery "has a well-recognized expertise"

15  in the substantive law governing this action. *In re Countrywide Fin. Corp. Deriv. Litig.*, 542 F. Supp.

16  2d 1160, 1173 (C.D. Cal. 2008); *In re: CytRx Corp.*, 2015 WL 9871275, at *2 ("A Delaware state court

17  is more at home with Delaware law than is a California federal district court."). Because of the

18  Delaware Court of Chancery's greater familiarity with, and expertise in, Delaware corporate law, this

19  factor weighs heavily in favor of dismissal.

20       *Third*, there is no evidence that the Delaware Court of Chancery would face significant

21  administrative difficulties in adjudicating this case—particularly when a virtually identical case to this

22  one already is being litigated in that Court. Moreover, even if Plaintiffs could provide evidence that

23  this Court's docket is less congested than the Chancery Court docket, court congestion "is afforded

24  little weight in assessing the public interest factors." *In re Air Crash Over Taiwan Straits on May 25,*

25  *2002*, 331 F. Supp. 2d 1176, 1203 (C.D. Cal. 2004).

26       Accordingly, Plaintiffs cannot meet their burden of demonstrating that the public-interest

27  factors make this the "exceptional" or "unusual" case in which a valid and binding exclusive forum

28  provision should be circumvented. *Atl. Marine*, 571 U.S. at 60, 63.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### C.   Plaintiffs Cannot Avoid The Exclusive Forum Provision By Pleading Baseless Securities Law Claims.

Plaintiffs will no doubt argue in their opposition to this Motion, as they asserted in the parties' joint CMC statement, *see* ECF 49, at 2, that their claims under the federal securities laws are sufficient to defeat application of the Exclusive Forum Provision because the Delaware Court of Chancery does not have jurisdiction over federal securities claims.  *See* ECF 49, at 2.  This Court should reject Plaintiffs' transparent attempt to circumvent the Exclusive Forum Provision by tacking onto their Complaint baseless Exchange Act claims under Sections 10(b) and 14(a).  *See Europe & Overseas Commodity Traders, S.A. v. Banque Paribas London*, 940 F. Supp. 528, 539 (S.D.N.Y. 1996) ("[I]t defies reason to suggest that a plaintiff may circumvent forum selection … clauses merely by stating claims under laws not recognized by the forum selected in the agreement.") (internal citation omitted); *Otor, S.A. v. Credit Lyonnais, S.A.*, 2006 WL 2613775, at *1 (S.D.N.Y. Sept. 11, 2006) (dismissing Exchange Act claims on *forum non conveniens* grounds where forum selection clause in shareholders' agreement required claims to be arbitrated in Paris; "The fact that plaintiffs have alleged claims based on the securities laws of this country is not compelling in this analysis."); *see also Fasano v. Juoqing Li*, 2017 WL 6764692, at *12 (S.D.N.Y. Dec. 29, 2017) (granting dismissal of federal securities law claims on *forum non conveniens* grounds).  Plaintiffs' position must be rejected because their federal securities causes of action are patently deficient and, in any event, those identical claims can be adjudicated in the putative securities class action lawsuit against Facebook pending before Judge Davila (the "Securities Action").  *See, e.g.*, *Yuan v. Facebook, Inc.*, No. 5:18-cv-01725-EJD.

As set forth in the individual defendants' concurrently filed Motion to Dismiss under Rule 12(b)(6), which is incorporated herein, Plaintiffs have failed to state a claim under Sections 10(b) and 14(a) of the Exchange Act on multiple threshold and incurable grounds.  By way of example, the Section 10(b) claim must be dismissed because Plaintiffs have failed to meet the threshold pleading requirements under the Private Securities Litigation Reform Act of 1995 ("PSLRA") for multiple essential elements of their claim, including falsity, scienter, and loss causation.  (*See* Individual Defs.' Mot. at 12-19).  The Section 14(a) claim also must be dismissed because Plaintiffs fail to allege with the specificity required by the PSLRA any materially false or misleading statements in Facebook's Proxy Statements, or that any alleged misstatements regarding Facebook's commitment to data privacy

15

are adequately alleged to have been an "essential link" to the election of Facebook directors.  (*See id.* at 5-12).

Alternatively, even if the Court does not dismiss Plaintiffs' Exchange Act claims, it nonetheless should sever and dismiss Plaintiffs' other claims on *forum non conveniens* grounds,[5] and stay the Exchange Act claims for the reasons set forth in Facebook's concurrently filed Motion to Stay, which is incorporated herein.  *See* Fed. R. Civ. P. 21 ("On motion or on its own … t]he court may … sever any claim against a party.").  "A district court has wide discretion to sever a claim against a party into separate case," and courts routinely sever claims to prevent circumvention of a valid forum selection clause.  *In re Rolls Royce Corp.*, 775 F.3d 671, 680 (5th Cir. 2014) (reversing and remanding with instructions to sever claims subject to a forum selection clause); *see also Crede CG III, Ltd. v. 22nd Century Group, Inc.*, 2017 WL 280818, at *16 (S.D.N.Y. Jan. 20, 2017) (severing claims and noting that "limiting *Atlantic Marine* to its precise facts … would allow 'any clever party to a lawsuit' to plead around a valid forum selection clause").

Just as in the Securities Action, where Facebook is defending itself against Exchange Act claims that it made false or misleading statements, Plaintiffs here seek to have Facebook assert Exchange Act claims against Facebook's directors for allegedly causing the Company to make false and misleading statements.  *See* Motion to Stay at 13-14.  Courts routinely stay derivative cases in exactly this context—where proceeding with a derivative action would "jeopardize [a] company's defense" in a related securities litigation.  *In re STEC, Inc.*, 2012 WL 8978155, at *4 (C.D. Cal. 2012) ("Courts generally stay a shareholder derivative suit until the culmination of a securities class action when the cases arise from the same factual allegations and the evidence in the former could jeopardize the company's defense in the latter.").

## V.   CONCLUSION

For the foregoing reasons, the Complaint should be dismissed on *forum non conveniens* grounds.

---

[5] Because the non-Exchange Act claims in this case are virtually identical to the derivative claims asserted against Facebook directors in the substantially similar *Sbriglio* derivative case pending in the Delaware Chancery Court, the putative Plaintiff in this action—Facebook—will not be prejudiced by dismissal of the non-Exchange Act claims here.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  August 10, 2018

GIBSON, DUNN & CRUTCHER LLP

By:  _____*/s/ Orin Snyder*_____
Orin Snyder
200 Park Avenue
New York, N.Y. 10166-0193
Tel: 212.351.4000
Fax: 212.351.4035
osnyder@gibsondunn.com

Joshua S. Lipshutz
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Tel:  202.955.8500
Fax:  202.467.0539
jlipshutz@gibsondunn.com

Kristin A. Linsley
Brian M. Lutz
555 Mission Street
Suite 3000
San Francisco, CA 94105-0921
Tel: 415.393.8200
Fax: 415.374.8306
klinsley@gibsondunn.com
blutz@gibsondunn.com

Paul J. Collins
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel:  650.849.5300
Fax:  650.849.5333
pcollins@gibsondunn.com

*Attorneys for Nominal Defendant Facebook, Inc.*

Gibson, Dunn &
Crutcher LLP