UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE FACEBOOK, INC. SHAREHOLDER DERIVATIVE PRIVACY LITIGATION | Case No.  18-cv-01792-HSG |
| | **ORDER ON MOTIONS TO DISMISS, MOTION TO STAY, AND MOTION TO INTERVENE** |
| This Document Relates To: | Re: Dkt. Nos. 69, 70, 71, 72, 84 |
| ALL ACTIONS | |

Plaintiffs Jeremiah F. Hallisey, Ronald Martin, Natalie Ocegueda, James Karon, and the Gloria Stricklin Trust (collectively, "Plaintiffs") bring this shareholder derivative action against nominal Defendant Facebook, Inc. ("Facebook") and individual Defendants Mark Zuckerberg, Sheryl Sandberg, Marc Andreesen, Peter Thiel, Reed Hastings, Erskine B. Bowles, Dr. Susan D. Desmond-Hellmann, and Jan Koum (collectively, "Individual Defendants," and with Facebook, "Defendants").  Christopher Leagre ("State Plaintiff"), plaintiff in a separate derivative litigation in Delaware state court, also filed a motion to intervene in this action.  Dkt. No. 84.

Pending before the Court are Facebook's motion to dismiss under Federal Rule of Civil Procedure ("FRCP") 23.1, Dkt. No. 69; the Individual Defendants' motion to dismiss under FRCP 12(b), Dkt. No. 70; Facebook's motion to dismiss based on *forum non conveniens*, Dkt. No. 71; Facebook's motion to stay, Dkt. No. 72; and State Plaintiff's motion to intervene, Dkt. No. 84. For the reasons articulated below, the Court **GRANTS IN PART** Facebook's motion to dismiss on *forum non conveniens* grounds as to the derivative state claims and dismisses those claims without leave to amend, **GRANTS** Facebook's motion to dismiss under FRCP 23.1 as to the remaining derivative federal claims and dismisses those claims with leave to amend, **DENIES AS MOOT** Individual Defendants' motion to dismiss under FRCP 12(b) and Facebook's motion to stay, and **DENIES** State Plaintiff's motion to intervene.

## I.   BACKGROUND

Plaintiffs filed a consolidated shareholder derivative complaint on July 2, 2018 against Defendants, Dkt. No. 56 ("Complaint" or "Compl."), for claims related to Facebook's data privacy protection policies and practices in the wake of the revelation that Cambridge Analytica was misappropriating millions of Facebook users' information for use in political campaigns. *See* Compl. ¶¶ 1–15.  For the purpose of deciding the motions to dismiss, the following allegations are taken as true.

Facebook is a Delaware corporation with its headquarters in Menlo Park, California. *Id.* ¶ 26.  It was founded in 2004, and as of March 2018, it was one of the biggest social networking services with approximately 1.45 billion daily active users and 2.2 billion monthly active users. *Id.* ¶ 42.  Users can interact with each other through their social profiles by messaging, joining groups, and posting status updates; users also can interact with a wide range of other applications that are integrated with Facebook. *Id.* ¶ 44.  The "Facebook Platform" allows third-party developers to integrate their own apps with Facebook, and through the use of Facebook "features" implemented on their apps (such as the "Like" and "Share" buttons), these third-party developers have access to user information. *Id.* ¶¶ 46–48.  In return, Facebook also obtains more information about users' activities, such as purchasing behavior. *Id.* at ¶ 48.  Facebook's core revenue is based on advertising, which is carefully targeted based on the information that Facebook gathers about its users. *Id.* ¶ 52.

At the time this action was filed, Facebook's Board of Directors (the "Board") had nine members. *Id.* ¶ 380.  Defendants are former and current Facebook directors and officers and are named as follows: Mark Zuckerberg (Director, Founder, Chairman, and CEO), Sheryl Sandberg (Director and Chief Operating Officer), Marc Andreessen (Director), Peter Thiel (Director), Reed Hastings (Director), Erskine B. Bowles (Director), Dr. Susan D. Desmond-Hellman (Director), and Jan Koum (former Director). *Id.* ¶¶ 28–34.

In 2011, in an effort to protect user and consumer privacy, the Federal Trade Commission ("FTC") entered into a consent decree with Facebook and required Facebook to establish and maintain a comprehensive privacy program to address privacy risks and protect user data. *Id.* ¶¶ 2,

40. One of Facebook's obligations was to obtain third-party audits every two years certifying it had a privacy program in place that met or exceeded the requirements of the FTC order. *Id*. ¶ 40. The Board is responsible for overseeing Facebook's compliance with the FTC consent decree. *Id*. ¶ 197.

### A.  Cambridge Analytica Scandal and Plaintiffs' Allegations

Cambridge Analytica is a political consulting firm that impermissibly gathered and analyzed data from millions of Facebook users in order to influence U.S. elections. *Id*. ¶ 3.  This was first reported in 2015, and Defendants were aware then that Cambridge Analytica was engaging in the unauthorized use of Facebook's user data. *Id*. ¶¶ 3, 121.  After this discovery, Facebook stated that it had obtained written certifications from the third parties responsible "declaring that all such data they had obtained was accounted for and destroyed." *Id*. ¶ 126. However, in March 2018, it was reported that Cambridge Analytica may not actually have deleted the data and was still misappropriating information to "target political advertising and manipulate voters." *Id*.  ¶¶ 7–8.  Facebook hired a forensic auditor to uncover whether that information indeed had been destroyed. *Id*. ¶ 126.

In the wake of the Cambridge Analytica scandal, multiple lawsuits against Facebook and its Board were filed in courts around the U.S., including this derivative action brought by Plaintiffs on March 22, 2018. *See* Dkt. No. 1.  While Plaintiffs' Complaint contains a host of allegations, the main crux of their claims is as follows:

- Facebook's 2016, 2017, and 2018 proxy statements failed to disclose the Cambridge Analytica incident, or the "seriously deficient internal controls and privacy policies" Facebook maintained, which "allowed and perpetuated Facebook's violations of user privacy and other laws" in violation of Section 14(a) of the Securities and Exchange Act ("Exchange Act"). *Id*. ¶¶ 336–338, 342–347.

- Facebook's 2018 proxy statement contained a misrepresentation concerning the Board's role in risk oversight and misled shareholders to "vote against 'Stockholder Proposals' meant to improve the Board's governance," in violation of Section 14(a) of the Exchange Act. *Id*. ¶¶ 339–341.

United States District Court
Northern District of California

- Defendants "knowingly or recklessly" made materially false or misleading statements and/or omissions regarding Facebook's privacy practices and internal controls, including misleading statements in the risk disclosures section of Facebook's 2015, 2016, and 2017 annual reports, in breach of their fiduciary duties and in violation of Section 10(b) of the Exchange Act. *Id.* ¶¶ 348–355. Defendants' alleged misrepresentations boosted the stock price, "causing the Company to repurchase shares at artificially inflated prices." *Id.* ¶ 348.

- Facebook repurchased 13 million Class A common shares for approximately $2.07 billion in 2017. *Id.* ¶¶ 348, 350. The Board approved these securities repurchases. *Id.* ¶ 351. However, when Defendants' "prior misrepresentations and fraudulent conduct were disclosed," the stock price fell. *Id.* ¶ 367. Were it not for the material misstatements, Facebook "would not have repurchased Facebook stock at artificially inflated prices" and would not have suffered damages when the stock price fell. *Id.* ¶¶ 362, 367.

- During the time when Facebook's stock price was artificially inflated, Individual Defendants Zuckerberg, Sandberg, and Koum collectively sold $1.5 billion worth of their personally-held Facebook shares, while in possession of material, non-public information, in violation of their fiduciary duties of loyalty and good faith and California Corporations Code § 25402. *Id.* ¶¶ 368, 473–477.

- Because Defendants were "aware of" the insider trading and had the ability and knowledge "to control and influence" the selling Defendants, all Defendants are liable under California Corporations Code § 25403. *Id.* ¶¶ 485–487.

- Defendants failed to ensure Facebook maintained adequate internal controls in compliance with the FTC consent decree and other applicable privacy laws, thereby breaching their fiduciary duties of candor, good faith, loyalty, and reasonable inquiry. *Id.* ¶ 491.

- Defendants implemented and oversaw "Facebook's illegal business strategy of pursuing profits and revenue growth through violation of various laws" in order to

4

achieve an improper result that was not in Facebook's best interest, in breach of the Individual Defendants' fiduciary duties. *Id.* ¶ 493.

Plaintiffs bring this derivative action alleging the following eight causes of action: (1) violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9, against the Individual Defendants; (2) violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5, against Defendants; (3) misappropriation of information and breach of fiduciary duty for insider sales, against Individual Defendants Zuckerberg, Sandberg, and Koum; (4) violation of California Corporations Code § 25402, against Individual Defendants Zuckerberg, Sandberg, and Koum; (5) violation of California Corporations Code § 25403, against Defendants; (6) breach of fiduciary duty, against Defendants; (7) contribution and indemnification, against Defendants; and (8) aiding and abetting breaches of fiduciary duty, against Defendants. *Id.* ¶¶ 464-517.

## II.    REQUEST FOR JUDICIAL NOTICE

In support of Defendants' motions to dismiss and motion to stay, Defendants have requested that the Court take judicial notice of, or consider under the incorporation by reference doctrine, the following documents: published articles, Exs. 2–4;[1] a blog post and white paper from the Facebook Newsroom, Exs. 5, 7; excerpts from Facebook's June 29, 2018 Congressional Hearing, Ex. 6; and Facebook's publicly-filed Securities and Exchange Commission ("SEC") filings, Exs. 8–16. Dkt. Nos. 73, 74. Plaintiffs object to Defendants' request as to all of the exhibits. Dkt. No. 82.

The Ninth Circuit has recently addressed the overuse of the judicial notice rule and incorporation by reference doctrine. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018). Under Federal Rule of Evidence 201, a court may take judicial notice of a fact "not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Accordingly, a court may take "judicial notice of matters of public record," but "cannot take judicial notice of disputed facts contained in such public records." *Khoja*, 899 F.3d at 999 (citation and quotations omitted).

---

[1] All exhibits referenced herein are attached to the Declaration of Brian M. Lutz in support of Defendants' motions, filed on August 10, 2018. Dkt. No. 74.

United States District Court
Northern District of California

The Ninth Circuit has clarified that if a court takes judicial notice of a document, it must specify what facts it judicially noticed from the document. *Id*. at 999.  Separately, the incorporation by reference doctrine is a judicially-created doctrine that allows a court to consider certain documents as though they were part of the complaint itself. *Id*. at 1002.  This is to prevent plaintiffs from cherry-picking certain portions of documents that support their claims, while omitting portions that weaken their claims. *Id*.  However, it is improper to consider documents "only to resolve factual disputes against the plaintiff's well-pled allegations in the complaint." *Id*. at 1014.

The Court here takes judicial notice of Defendants' Exhibit 9 (Facebook's Restated Certificate of Incorporation dated May 22, 2012, which was attached to Facebook's Form 10-Q, filed with the SEC on July 31, 2012). *See* Dkt. Nos. 74, 74-9.  Specifically, the Court takes judicial notice of the undisputed fact that Article VII is Facebook's provision governing director liability and indemnification, and Article IX is Facebook's choice of forum provision.  "Courts routinely consider a company's certificate of incorporation and bylaws in assessing a motion to dismiss a derivative suit." *Foss on Behalf of Quality Sys. Inc. v. Barbarosh*, No. SACV1400110CJCJPRX, 2018 WL 5276292, at *4 n.8 (C.D. Cal. July 25, 2018) (citing cases).  "A document which [] itself affects the legal rights of the parties is not introduced for the truth of the matter asserted because the significance of [the] offered statement lies solely in the fact that it was made." *Id*. (citation and quotations omitted).  Accordingly, because Facebook's Certificate of Incorporation is a governing corporate document that affects the legal rights of Defendants, and the provisions have independent legal significance, Defendants' request for judicial notice is **GRANTED** as to Exhibit 9.[2]

The Court does not consider the remaining documents, Exs. 2–8 and 10–16, in resolving the motions, and thus **DENIES AS MOOT** Defendants' request for judicial notice as to those documents. *See Sgarlata v. PayPal Holdings, Inc.*, No. 17-CV-06956-EMC, 2018 WL 6592771,

---

[2] Plaintiffs do not dispute the authenticity of this corporate governing document but instead claim generally in their opposition that "[t]he SEC filings are precisely what Plaintiffs allege are misleading, which forms the very basis of Plaintiffs' Complaint." Dkt. No. 82 at 3.  However, Plaintiffs point to no allegations in the Complaint that the Certificate of Incorporation was misleading or inaccurate in any way. *See* Dkt. No. 82 at 3; *see generally* Compl. (only references to certificate of incorporation do not allege that it is misleading).

United States District Court
Northern District of California

at *6 (N.D. Cal. Dec. 13, 2018) (denying as moot request for judicial notice of documents not considered by the court).[3]

## III.     FORUM NON CONVENIENS

The Court first addresses Facebook's *forum non conveniens* argument.  *See* Dkt. No. 71 ("Mot. FNC").  Because Facebook argues that a forum selection clause governs this action, *see* Mot. FNC at 1–2, the Court begins by addressing its enforceability.

### A.     Legal Standard

A forum selection clause is appropriately enforced through the doctrine of *forum non conveniens*.  *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 61 (2013).  Generally, "[t]o prevail on a motion to dismiss based upon *forum non conveniens*, a defendant bears the burden of demonstrating an adequate alternative forum, and that the balance of private and public interest factors favors dismissal."  *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011).  However, when "the parties' contract contains a valid forum-selection clause," that clause "[should be] given controlling weight in all but the most exceptional cases."  *Atl. Marine*, 571 U.S. at 63 (citation and quotations omitted and brackets in original).  The Court "must enforce a forum-selection clause unless the contractually selected forum affords the plaintiffs no remedies whatsoever."  *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1092 (9th Cir. 2018).  In evaluating such a case, "the plaintiff's choice of forum merits no weight.  Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted."  *Atl. Marine*, 571 U.S. at 63.  Additionally, the Court "should not consider arguments about the parties' private interests," including whether the chosen forum is "inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation."  *Id.* at 64.  Therefore, "a district court may consider arguments about public-interest factors only.  Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except

---

[3] The Court also does not consider Exhibit 1, a summary document created by Defendants' counsel purporting to categorize the allegations in the Complaint.  Defendants offer no appropriate basis for the Court to consider a party's selective summary of some of the Complaint's allegations.

1    in unusual cases." *Id.*

2    **B.    Discussion**

3    Facebook argues that Article IX of its Restated Certificate of Incorporation contains an

4    exclusive forum selection clause, making the Delaware Court of Chancery the exclusive forum for

5    this action.  Mot. FNC at 3.   Specifically, Article IX states that:

> Unless the corporation consents in writing to the selection of an
> alternative forum, the Court of Chancery of the State of Delaware
> shall, to the fullest extent permitted by law, be the sole and
> exclusive forum for (1) any derivative action or proceeding brought
> on behalf of the corporation, (2) any action asserting a claim of
> breach of a fiduciary duty owed by, or other wrongdoing by, any
> director, officer, employee or agent of the corporation to the
> corporation or the corporation's stockholders, (3) any action
> asserting a claim arising pursuant to any provision of the General
> Corporation Law or the corporation's Restated Certificate of
> Incorporation or Bylaws, (4) any action to interpret, apply, enforce
> or determine the validity of the corporation's Restated Certificate of
> Incorporation or Bylaws or (5) any action asserting a claim
> governed by the internal affairs doctrine, in each such case subject
> to said Court of Chancery having personal jurisdiction over the
> indispensable parties named as defendants therein.  Any person or
> entity purchasing or otherwise acquiring any interest in shares of
> capital stock of the corporation shall be deemed to have notice of
> and consented to the provisions of this ARTICLE IX.

16   Dkt. No. 74-9, Ex. 9 at 12.  Under Article IX, any action that falls within one of the five

17   enumerated categories shall be litigated in the Delaware Court of Chancery, unless Facebook

18   consents in writing to the selection of an alternative forum.  *See id.*  Plaintiffs do not dispute the

19   *prima facie* validity of the forum selection clause, nor do they dispute that the Delaware Court of

20   Chancery has jurisdiction over the state claims, that the action is brought as a shareholder

21   derivative complaint on behalf of Facebook, that the action involves a claim of breach of a

22   fiduciary duty owed by an officer of Facebook, or that the action asserts a claim governed by the

23   internal affairs doctrine.  *See* Dkt. No. 83 ("Opp. FNC").  Instead, Plaintiffs argue that the forum

24   selection clause should not be enforced because: (1) the Delaware Court of Chancery is not an

25   adequate alternative forum and does not have jurisdiction over Plaintiffs' Exchange Act claims;

26   (2) Plaintiffs are not signatories to the Restated Certificate of Incorporation and the inclusion of

27   the forum selection clause was the result of "overreaching"; and (3) the public interest factors,

28   including the local interest in having localized controversies decided at home, weigh against

United States District Court
Northern District of California

8

United States District Court
Northern District of California

enforcing the clause.  *See id.*  The Court addresses each argument below.

### i.    Suitability of Alternative Forum

Plaintiffs have not carried their burden of showing that the selected forum "is so gravely difficult and inconvenient that the complaining party will for all practical purposes be deprived of its day in court."  *Argueta v. Banco Mexicano, S.A.,* 87 F.3d 320, 325 (9th Cir. 1996) (citation and quotations omitted).  Plaintiffs argue that the Delaware Court of Chancery is not a suitable alternative forum for the following reasons: the Delaware Court of Chancery does not have jurisdiction over Plaintiffs' federal claims, Opp. FNC at 6; it cannot exercise personal jurisdiction over certain parties who are not yet in the case, *id.* at 9; a pending motion to dismiss in a similar action before the Delaware Court of Chancery would leave Facebook "with no remedy if this Action is dismissed," *id.* at 14; the Delaware Court of Chancery cannot provide the same remedies as a federal court, *id.*; and the Delaware Court of Chancery is less familiar with the California Corporations Code sections asserted than this Court is, *id.* at 15.  The Court does not find any of these arguments persuasive.

"Courts must enforce a forum-selection clause unless the contractually selected forum affords the plaintiffs *no remedies whatsoever*."  *Sun*, 901 F.3d at 1091–1092 (emphasis added).  Those remedies need not stem from the same statutes originally asserted.  *Id.*  Although the Delaware Court of Chancery does not have jurisdiction to hear Plaintiffs' federal claims, the Court has discretion to sever the federal claims and dismiss the remaining claims to be brought in the prescribed forum.  Fed. R. Civ. P. 21.  This path is appropriate here, as the Delaware Court of Chancery "unquestionably has a well-recognized expertise in the field of state corporation law."  *In re Countrywide Fin. Corp. Derivative Litig.*, 542 F. Supp. 2d 1160, 1173 (C.D. Cal. 2008) (citation and quotations omitted).

Plaintiffs' other arguments fail because the convenience of witnesses and Plaintiffs' preferred venue are not factors that the Court considers in deciding the enforceability of a valid forum selection clause.  *See Atl. Marine*, 571 U.S. at 64.  Even so, the Court fails to see how the outcome of a pending motion to dismiss in a similar derivative lawsuit deprives Plaintiffs of *any* remedy.  Instead, this seems to support Facebook's argument that Plaintiffs could pursue identical,

1    or substantially similar, remedies in the Delaware Court of Chancery.  *See* Opp. FNC at 14; Dkt.

2    No. 88 ("Reply FNC") at 7–8.

3         Finally, Plaintiffs claim that this Court has "more interest and expertise" than the Delaware

4    Court of Chancery in adjudicating California's insider trading statutes (California Corporations

5    Code §§ 25402 and 25403).  Opp. FNC at 15.  However, Plaintiffs fail to consider that under

6    California's internal affairs doctrine, California Corporations Code § 2116, Plaintiffs are barred

7    from bringing these claims in a derivative lawsuit when a company's place of incorporation is not

8    California.  *See In re Wells Fargo & Co. S'holder Derivative Litig.*, 282 F. Supp. 3d 1074, 1111–

9    12 (N.D. Cal. 2017) (claims under § 25402 in derivative action are barred by internal affairs

10   doctrine and must be brought under Delaware law, the corporation's state of incorporation); *In re*

11   *Sagent Tech., Inc., Derivative Litig.*, 278 F. Supp. 2d 1079, 1092 (N.D. Cal. 2003) (same).

12        Plaintiffs thus have not shown that the Delaware Court of Chancery would be unable to

13   provide an adequate remedy for their shareholder derivative claims.

14        **ii.     Applicability of Forum Selection Clause to Plaintiffs**

15        Plaintiffs cite *Technology Credit Corporation* for the proposition that the forum selection

16   clause cannot be enforced against parties who are non-signatories.  Opp. FNC at 10 (citing *Tech.*

17   *Credit Corp. v. N.J. Christian Acad., Inc.,* 307 F. Supp. 3d 993 (N.D. Cal. 2018)).  *Technology*

18   *Credit Corporation* is not on point and does not stand for this proposition.  *Technology Credit*

19   *Corporation* addressed two forum selection clauses in the context of a § 1404 transfer analysis.

20   307 F. Supp. 3d at 1003–10.  In evaluating the choice of forum factor, the court found that the

21   forum selection clause to which one of the parties was a non-signatory did not "subsume" a

22   second forum selection clause to which both parties were signatories.  *Id.* at 1009–10.

23        Plaintiffs' argument also has been rejected by the courts in Delaware and elsewhere.  The

24   "argument that stockholders must approve a forum selection bylaw for it to be contractually

25   binding is an interpretation that contradicts the plain terms of the contractual framework chosen by

26   stockholders who buy stock in [the corporation:] when stockholders have authorized a board to

27   unilaterally adopt bylaws, it follows that the bylaws are not contractually invalid simply because

28   the board-adopted bylaw lacks the contemporaneous assent of the stockholders."  *Boilermakers*

United States District Court
Northern District of California

10

United States District Court
Northern District of California

1    *Local 154 Ret. Fund v. Chevron Corp.*, 73 A.3d 934, 956 (Del. Ch. 2013).  Where, as here, "a

2    corporation's board . . . unilaterally adopt[s] a forum-selection bylaw that binds shareholders who

3    bought stock before the bylaw's adoption," that forum selection provision is nonetheless still

4    valid.  *See In re: CytRx Corp. Stockholder Derivative Litig.*, No. CV146414GHKPJWX, 2015 WL

5    9871275, at *4 (C.D. Cal. Oct. 30, 2015).

6          Plaintiffs also argue that the forum selection clause is a product of fraud and overreaching

7    because it was adopted "after the wrongdoing had commenced." Opp. FNC at 12.  "For a party to

8    escape a forum selection clause on the grounds of fraud, it must show that 'the *inclusion of that*

9    *clause in the contract* was the product of fraud or coercion." *Richards v. Lloyd's of London*, 135

10   F.3d 1289, 1297 (9th Cir. 1998) (affirming grant of motion to dismiss based on forum selection

11   clause) (emphasis in original).  Plaintiffs have not so alleged.  First, there are no allegations in the

12   Complaint that the inclusion of the forum selection provision was a result of fraud: this argument

13   was raised for the first time in Plaintiffs' opposition.  *See generally* Compl.; Opp. FNC at 12.

14   Second, in their opposition, Plaintiffs ask the Court to infer, based on timing only, that Defendants

15   adopted the clause to "ensure that any actions against them for the wrongdoing that had already

16   occurred would be brought in the far more director-friendly Delaware Chancery Court." Opp.

17   FNC at 12.  Absent any allegation to support this speculative inference, the Court will not infer

18   fraud based on this fact.  *See Richards*, 135 F.3d at 1297 (finding that fraud claims failed in the

19   absence of allegations going to the basis for inclusion of choice clauses).  Further, "a forum-

20   selection bylaw does not become unenforceable simply because it was adopted after the purported

21   wrongdoing." *CytRx Corp.*, 2015 WL 9871275 at *5 (citation and quotations omitted).  Plaintiffs

22   have not shown that the adoption of the forum selection clause was a result of overwhelming

23   bargaining power, fraud, or overreaching.[4]

24   _____

25   [4] Plaintiffs assert that there are "multiple factual disputes" relating to the forum selection clause
     itself that cannot be resolved at the motion to dismiss stage. Opp. FNC at 3, 13.  Yet Plaintiffs

26   only point to one such purported dispute, concerning the forum selection clause's relationship to
     Facebook's Terms of Service.  *Id.* at 13.  This is not a "factual dispute."  Facebook's Terms of

27   Service states that "any claim, cause of action, or dispute that arises out of or relates to these
     Terms or the Facebook Products … will be resolved exclusively in the U.S. District Court for the
     Northern District of California or a state court located in San Mateo County." *Id.* at 13.  However,

28   Facebook's Terms of Service apply to Facebook *users*, whereas this is a derivative action brought

11

United States District Court
Northern District of California

### iii.    Public Interest Factors

Plaintiffs contend that California has an interest "in having a local business's claim decided here," and that California is also "at home with the law." Opp. FNC at 16.  For similar reasons as discussed above, the Court does not find these assertions compelling enough to make this an "exceptional" and "unusual" case so as to justify overriding the forum selection clause. *See Atl. Marine*, 571 U.S. at 63–64.  Facebook is a Delaware corporation, this is a derivative action, the substantive state claims are governed by Delaware law, and "forum-selection bylaws help avoid inefficient multi-forum derivative litigation." *CytRx Corp.*, 2015 WL 9871275, at *5.

### C.    Conclusion

For the foregoing reasons, Facebook's motion to dismiss based on *forum non conveniens* is **GRANTED IN PART** as to Plaintiffs' derivative state law claims.  Those claims are dismissed without leave to amend but without prejudice to their reassertion in the Delaware Court of Chancery.

## IV.    MOTION TO DISMISS UNDER TO FRCP 23.1

The Court next addresses Facebook's motion to dismiss for failure to plead demand futility under FRCP 23.1 for Plaintiffs' remaining federal claims.  *See* Dkt. No. 69 ("Mot.").

Plaintiffs concede that they did not make a demand on the Board before filing suit, but allege that demand would have been futile.  Compl. ¶ 378.  In support, Plaintiffs allege that the Individual Defendants were interested because they "affirmatively adopted, implemented, and condoned a business strategy based on deliberate and widespread violations of applicable law … and/or consciously disregarded numerous red flags of misconduct throughout the relevant period, subjecting them to a substantial likelihood of liability as to Plaintiffs' claims against them in this action." *Id.* ¶ 379.  Plaintiffs also allege that because Defendant Zuckerberg "dominates and

by Facebook *shareholders* on behalf of Facebook.  The Terms of Service have no applicability here.  Plaintiffs also fare no better by citing the Court's July 19, 2018 order denying Plaintiffs' request to lift the discovery stay as support for their assertion that factual disputes regarding contract interpretation require deferral of this issue.  *See Id.* at 3.  In that order, the Court stated "Plaintiffs' request [to lift the discovery stay] anticipates a motion that *may or may not raise a contract interpretation* issue, for which discovery may or may not be warranted," but "[n]o such factual controversy exists in this case at the time."  Dkt. No. 65 at 3 (emphasis added).  As already discussed, Plaintiffs have shown no factual controversy regarding the forum selection clause.

controls the Board," a majority of the Individual Defendants are "beholden to Zuckerberg and lack independence from him." *Id.*

### A. Legal Standard

It is a long-held "basic principle of corporate governance that the decisions of a corporation—including the decision to initiate litigation—should be made by the board of directors or the majority of shareholders." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 101 (1991) (citation and quotations omitted).  However, a "derivative form of action permits an individual shareholder to bring suit to enforce a *corporate* cause of action against officers, directors, and third parties." *Kamen*, 500 U.S. at 95 (emphasis in original).  The purpose of such an action is "to place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of faithless directors and managers." *Id.* Because this effectively wrests control from the board of directors, a "shareholder seeking to vindicate the interests of a corporation through a derivative suit must first demand action from the corporation's directors or plead with particularity the reasons why such demand would have been futile." *In re Silicon Graphics Inc. Secs. Litig.,* 183 F.3d 970, 989 (9th Cir.1999).

FRCP 23.1 likewise articulates the pleading standard for assessing allegations of demand futility:  a shareholder plaintiff must either "demand action from the corporation's directors before filing suit, or plead with factual particularity the reasons why such a demand would have been futile." *In re PayPal Holdings, Inc. S'holder Derivative Litig.*, No. 17-CV-00162-RS, 2018 WL 466527, at *2 (N.D. Cal. Jan. 18, 2018); *see* Fed. R. Civ. P. 23.1(b)(1).  "Because of the extraordinary nature of a shareholder derivative suit, Rule 23.1 establishes stringent conditions for bringing such a suit." *Quinn v. Anvil Corp.*, 620 F.3d 1005, 1012 (9th Cir. 2010).  The substantive law of the state of incorporation establishes the circumstances under which demand would be futile.  *See Silicon Graphics*, 183 F. 3d at 990.  Because Facebook is a Delaware corporation, Compl. ¶ 26, Delaware law regarding demand futility applies here.

Under Delaware law, "directors are entitled to a *presumption* that they were faithful to their fiduciary duties," and "the burden is upon the plaintiff in a derivative action to overcome that presumption." *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040,

1048–49 (Del. 2004) (emphasis in original).  Demand is excused only "if Plaintiffs' particularized

allegations create a reasonable doubt as to whether a majority of the board of directors faces a

substantial likelihood of personal liability for breaching the duty of loyalty."  *See In re Impax*

*Labs., Inc. S'holder Derivative Litig.*, No. 14-CV-04266-HSG, 2015 WL 5168777, at *4 (N.D.

Cal. Sept. 3, 2015) (quoting *Rosenbloom v. Pyott*, 765 F.3d 1137, 1150 (9th Cir. 2014)).[5]  Demand

futility is assessed on a director-by-director basis, and a derivative complaint must "plead facts

*specific to each director*, demonstrating that at least half of them could not have exercised

disinterested business judgment in responding to a demand."  *Desimone v. Barrows*, 924 A.2d

908, 943 (Del. Ch. 2007) (emphasis in original).  Further, where "directors are contractually or

otherwise exculpated from liability for certain conduct, then a serious threat of liability may only

be found to exist if the plaintiff pleads a non-exculpated claim against the directors based on

particularized facts." *Wood v. Baum*, 953 A.2d 136, 141 (Del. 2008) (quotations and emphasis

omitted).

      Because Article VII in Facebook's Restated Certificate of Incorporation includes an

exculpatory provision that shields Facebook's directors from liability for breaches of fiduciary

duty to the fullest extent permitted by the Delaware General Corporation Law, Dkt. No. 74-9, Ex.

9 at 11, Plaintiffs must "plead particularized facts that demonstrate that the directors acted with

scienter, *i.e.*, that they had actual or constructive knowledge that their conduct was legally

---

[5] Under Delaware law, there are two relevant tests for when demand can be excused: *Aronson* and *Rales*.  *Rosenbloom*, 765 F.3d at 1149–50.  *Aronson* applies when plaintiffs challenge a specific board decision, and requires plaintiff to plead particularized facts that create a reasonable doubt that either "(1) the directors are disinterested and independent," or "(2) the challenged transaction was a valid exercise business judgment." *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984), *overruled in part on other grounds*, *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).  The *Rales* test applies to allegations of board *inaction*—specifically, that the board failed to act when it knew, or should have known, about illegal conduct—and essentially requires plaintiff to allege only the first prong of *Aronson*.  *See Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993).  Defendants argue that the Court should apply the *Rales* test because Plaintiffs' principal theory of liability is that Defendants failed to ensure that Facebook implemented adequate controls and reporting systems that would prevent data privacy violations.  Mot. at 10.  The Court tends to agree with Defendants, because the conclusory allegations that Defendants "perpetuat[ed] Facebook's illegal business practices" are "insufficiently particularized to allege a specific board decision." *See In re Morgan Stanley Derivative Litig.*, 542 F. Supp. 2d 317, 322 (S.D.N.Y. 2008).  However, the Court will follow the Ninth Circuit's approach in *Rosenbloom*, since there is both alleged action and inaction by the Board.  Under either test, the Court finds the outcome would be the same.

United States District Court
Northern District of California

improper." *Wood*, 953 A.2d at 141 (quotations omitted).[6]  A plaintiff may plead a bad faith claim by alleging particularized facts that show that a company's Board failed "to act in the face of a known duty to act, thereby demonstrating a conscious disregard for their responsibilities." *Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 370 (Del. 2006).

## B. Discussion

Plaintiffs must allege particularized facts sufficient to show that a majority of the directors were interested or lacked independence.  Plaintiffs proffer two main arguments as to the Individual Defendants' alleged interestedness: (1) the Individual Defendants consciously "disregarded numerous red flags of misconduct throughout the relevant period," and (2) the Individual Defendants "affirmatively adopted, implemented, and condoned a business strategy based on deliberate and widespread violations of applicable law."  Compl. ¶ 379.

As to whether the Individual Defendants are independent, Plaintiffs do not dispute Defendants' assertion that all but two of Facebook's nine directors are independent, meaning that they are not members of Facebook's management.  *See* Mot. at 5.  Instead, Plaintiffs claim that a majority of directors are not independent because they are "beholden to Zuckerberg."  Compl. ¶ 379.  For the reasons articulated below, the Court finds that Plaintiffs fail to plead particularized facts demonstrating that demand would be futile.

### i. Failure to Act

To adequately plead that a director has a disqualifying interest based on corporate inaction, Plaintiffs must plead that a "majority of the Board had actual or constructive knowledge of violations of the law at [the corporation] involving [the alleged illegal conduct] and did nothing." *Rosenbloom*, 765 F.3d at 1151.  This claim "essentially turns on whether Plaintiffs have adequately alleged scienter."  *Id.*  As to what constitutes a red flag, evidence of illegality is the "proverbial red flag."  *South v. Baker*, 62 A.3d 1, 15 (Del. 2012).  "Under Delaware law, red flags 'are only useful when they are either waved in one's face or displayed so that they are visible to

---

[6] Under Delaware General Corporation Law Section 102(b)(7), an exculpatory provision cannot limit liability of a director for any breach of the duty of loyalty or claims based on bad faith, fraudulent, or illegal misconduct.  8 Del. C. § 102(b)(7).

United States District Court
Northern District of California

the careful observer.'"  *Wood*, 953 A.2d at 143 (citation omitted).  The "corporate trauma" must be "sufficiently similar to the misconduct implied by the 'red flags,' such that the board's bad faith, 'conscious inaction' proximately caused the trauma." *Melbourne Mun. Firefighters' Pension Tr. Fund on Behalf of Qualcomm, Inc. v. Jacobs*, No. 10872-VCMR, 2016 WL 4076369, at *8 (Del. Ch. Aug. 1, 2016), *aff'd*, 158 A.3d 449 (Del. 2017).

Although Plaintiffs consistently refer to generalized privacy deficiencies at Facebook, *see, e.g.*, Compl. ¶ 382 ("Defendants' misconduct at the heart of this case constitutes direct facilitation of violations of federal, state, and international laws, including knowingly and consciously presiding over the Company's systematic deficiencies and unsound user privacy practices and concealing [sic]"), the "corporate trauma" appears to be Defendants' alleged failure to adequately protect user data from being misappropriated by Cambridge Analytica or other third parties. *See, e.g.*, Compl. ¶¶ 11, 110, 114–17; Opp. at 11 ("Facebook's path leading up to the Cambridge Analytica scandal was paved with numerous red flag warnings of similar wrongdoing").  Plaintiffs identify a host of purported "red flags" in their Complaint, including litigation and regulatory matters, Compl. ¶¶ 184–90, 317–35; information from former Facebook employees and investors, *id.* ¶¶ 118–20, 212–15, 220–23; and the FTC consent decree and FTC warning letters to third-party app developers, *id.* ¶¶ 249–50, 258, 398–401.

One of Plaintiffs' most prominent "red flag" allegations is based on the various litigation and regulatory matters related to privacy that Facebook has been involved in over a period of years. *See id.* ¶¶ 184–90, 317–35.  However, while these matters all relate to user privacy, Plaintiffs fail to show how knowledge of these matters would have imposed a duty for the Individual Defendants to act with respect to potential unauthorized *third-party* access to and use of Facebook users' personal data.[7]  For example, Plaintiffs allege that the 2010 "Beacon" litigation and various European Union audits and investigations were "red flags," but these were related to

---

[7] Aside from Defendant Zuckerberg, Plaintiffs' Complaint fails to allege with particularity that any Individual Defendant knew about these matters. *See* Compl. ¶ 187. Nonetheless, the Court finds that it is a reasonable inference that the Board knew about these regulatory and litigation matters. *See Rosenbloom*, 765 F.3d at 1154.  But the pivotal inquiry remains whether these alleged red flags are "sufficiently similar" to the "corporate trauma" underlying this action.  *See Melbourne Mun.*, 2016 WL 4076369, at *8.

Facebook's unauthorized tracking of users' and non-users' online activities, the policies and procedures of Facebook's data collection, and the sharing of user data with acquired apps. *See id.* ¶¶ 187, 317–35. While these allegations all concern significant privacy issues, the Court finds that they are not particularized enough to support the inference that the majority of the Board knew of sufficiently similar violations and consciously ignored them, such that this "corporate inaction" proximately caused the Cambridge Analytica scandal. *See Melbourne Mun.*, 2016 WL 4076369, at *8.

For similar reasons, the Court finds that the FTC warning letters to third-party app developers do not constitute red flags that raised a duty for Defendants to act, because they were not even issued to Facebook. *See* Compl. ¶¶ 249–50, 258. As to the complaints raised by former Facebook employees and a Facebook investor, *id.* ¶¶ 118–20, 212–15, 220–23, Plaintiffs fail to plead particularized facts showing that a majority of the Board was even aware of these complaints.

*In re Abbott Labs. Derivative S'holder Litig.*, 325 F.3d 795 (7th Cir. 2003), *In re Pfizer Inc. S'holder Derivative Litig.*, 722 F. Supp. 2d 453 (S.D.N.Y. 2010), and *Rosenbloom*, cases heavily relied upon by Plaintiffs, *see* Opp. at 8–14, involved more pertinent facts than those alleged here, and involved red flags that were clearly waved in the director's faces. *See Wood*, 953 A.2d at 143. In *Rosenbloom*, the FDA sent the Allergan board several letters, from 2001 to 2010, notifying them that Allergan's Botox promotional activities and materials were misleading. *Rosenbloom*, 765 F.3d at 1146–47. Significantly, the "corporate trauma" was that Allergan was breaking federal law through its off-label promotion of Botox. *Id.* Similarly, in *Abbott*, the FDA sent warning letters to the directors about the violations that the FDA eventually fined Abbott for. 325 F.3d at 798–800. Finally, in *Pfizer*, there were settlement reports made and FDA warning letters and violation notices sent to the board, all concerning the off-label marketing issues and kickbacks Pfizer ultimately was fined for. 722 F. Supp. 2d at 460–61. Plaintiffs fail to show how general and broad allegations related to privacy concerns and violations should have been used to "detect fraud" involving, specifically, a third party's unauthorized use of user data after certifying that the data had been destroyed. *See* Compl. ¶ 126; *see also Oklahoma Firefighters Pension &*

United States District Court
Northern District of California

1    *Ret. Sys. v. Corbat*, No. CV 12151-VCG, 2017 WL 6452240, at *20 (Del. Ch. Dec. 18, 2017)

2    ("Even assuming that these fraud-related incidents were brought to the attention of the Defendants

3    [ ], they could not have served as red flags [because] the collateral at issue was different in the two

4    frauds").

5            As to the FTC consent decree, Compl. ¶¶ 398–401, even assuming for purposes of the

6    Court's analysis that the consent decree was a red flag, Plaintiffs have not sufficiently alleged a

7    failure to act.  In fact, as Defendants argue, the Complaint shows that Defendants did affirmatively

8    act.  Mot. at 11–12.  There is no dispute that after the entry of the consent decree, Facebook had

9    internal controls and monitoring practices in place to detect deficiencies in Facebook's user

10   privacy and data security practices.  Compl. ¶¶ 241–47.  Plaintiffs simply allege that the

11   Cambridge Analytica leak proves that these were inadequate.  *Id.* ¶ 130.  Plaintiffs cannot "rely on

12   hindsight inferences instead of pleading specific actions or inactions that demonstrate similar

13   levels of wrongdoing on the part of the Director Defendants."  *Impax*, 2015 WL 5168777, at *7.

14   The Complaint acknowledges that, in response to the FTC consent decree, PwC, an external

15   auditing firm, audited Facebook's privacy controls and certified that the controls were operating

16   with "sufficient effectiveness to provide reasonable assurance to protect the privacy of covered

17   information."  Compl. ¶ 241.  These reports were submitted to the FTC.  *Id.*  The allegations of the

18   Complaint thus suggest that Facebook did have internal controls in place and that the Individual

19   Defendants were not turning a blind eye to the FTC consent decree and its requirements.  *See, e.g.*,

20   *id.* ¶¶ 243 (according to the audit report, "Facebook constantly enhances or updates its program to

21   protect individual users / information"), 245 ("PwC assessed Facebook's privacy program and

22   found the Company's internal controls were effective to detect and prevent similar wrongdoing"),

23   246 ("PwC stated there were no material weaknesses in Facebook's internal controls and

24   determined that Facebook's privacy program was sufficient to comply with the FTC Consent

25   Decree.").  Plaintiffs write off PwC's findings with conclusory allegations that PwC "acted

26   unreasonably" when conducting these audits, but plead no particularized allegations substantiating

27   those claims.  *See id.* ¶¶ 242, 244, 247.

28           Based on the above, the Court finds that Plaintiffs have failed to allege particularized facts

18

that establish the Individual Defendants consciously ignored red flags and therefore had a disqualifying interest that would have made demand futile. *See Wood*, 953 A.2d at 140. The Court recognizes that Facebook's alleged privacy issues are a serious matter. But the standard for demand futility is strict, and requires a particularized showing. *See Impax*, 2015 WL 5168777, at *6 ("Simply put, when it comes to 'red flags,' Plaintiffs' approach is little more than to catalog the ongoing investigations into [Facebook's] alleged wrongdoing, and then assert that the thickness of the catalog demonstrates that [Facebook's] conduct was so egregious and widespread that the [Individual Defendants] certainly must now face at least a 'substantial likelihood' of personal liability for having ignored the 'red flags.'").

### ii.  Evidence of Wrongdoing

Plaintiffs do not plead any particularized factual allegations to support their conclusory assertions that the Individual Defendants "perpetuat[ed] Facebook's illegal business practices" of "pursuing profits and revenue growth through violations of various laws." *See* Compl. ¶¶ 384, 493. Nor do they adequately plead that the Individual Defendants caused "materially false or misleading statements and omissions, including in Facebook's 2017 and 2018 Proxy Statements filed with the SEC." *Id*. ¶ 382.

As to the "illegal business practices," it is far from clear in the Complaint what exactly these illegal business practices were, let alone that any Individual Defendant knew of and participated in these practices. *See* Compl. ¶¶ 488–94. This overlaps with Plaintiffs' theory that the Individual Defendants *failed* to oversee and prevent violations of the law, but does nothing to adequately plead that there in fact was a business scheme that the Individual Defendants knew of and participated in. *See Impax*, 2015 WL 5168777, at *8. For example, one theory is that the Board's executive compensation practices "encouraged" unlawful activity: because executive compensation is based in part on contributions to the number of advertisers, this allegedly encouraged advertising practices based on "violating user privacy and other laws." Compl. ¶ 388. But the Complaint does not specify exactly what the Individual Defendants did to "encourage" these unlawful advertising practices, or why it must be that the Individual Defendants knew they were engaging in an unlawful scheme.

United States District Court
Northern District of California

Plaintiffs' allegations that Defendants caused materially false or misleading statements to be disseminated, *id*. ¶ 382, also fails for the same reason.  Plaintiffs fail to allege any particularized facts demonstrating how each Individual Defendant was involved in, prepared, or even knew about the alleged misstatements and omissions.  *See id*. ¶¶ 336–367; *see also Impax*, 2015 WL 5168777, at *8 ("For example, Plaintiffs do not allege that the Director Defendants condoned any allegedly false statements made at investor conferences or on conference calls, or that they knew about any alleged misrepresentations or omissions merely as a result of signing financial reports.")  Instead, Plaintiffs cite several lengthy paragraphs from the proxy statement in the Complaint, *see, e.g.*, Compl. ¶ 340, and make generalized allegations that Facebook's proxy statements and annual reports were misleading, *id*. ¶ 353, yet fail to say exactly which statements were false or misleading by omission, or why that misstatement or omission was material.  "A litany of alleged false statements, unaccompanied by the pleading of specific facts indicating why those statements were false, does not meet this standard." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008).

### iii.  Independence

Plaintiffs' final argument for demand futility goes to director independence.  To adequately plead that the Individual Defendants were not independent, Plaintiffs must "show that the directors are 'beholden' to the [other directors] or so under their influence that their discretion would be sterilized." *Rales*, 634 A.2d at 936.  Plaintiffs' main theory for lack of independence is that because Defendant Zuckerberg controls a majority of the Board, and because he was "personally involved in the policies relating to the data privacy issues at Facebook," Opp. at 15, he cannot consider a litigation demand, and the other Board members cannot either, because Zuckerberg "dominates and controls the entire Board." Compl. ¶ 423; Opp. at 15.  The Court rejects these arguments.

The mere fact that Zuckerberg is a controlling shareholder is not enough to establish his lack of independence, because that would "eviscerate" the disinterested prong of the demand futility test and "would find any director involved in the day-to-day running of company to be 'interested' under any set of facts." *In re Google, Inc. S'holder Derivative Litig.*, No. C 11-4248

United States District Court
Northern District of California

1   PJH, 2013 WL 5402220, at *5 (N.D. Cal. Sept. 26, 2013).  And, for the reasons set forth above,

2   Plaintiffs have not sufficiently pled that any of the Individual Defendants, including Zuckerberg,

3   were interested.  Further, the fact that Zuckerberg is a controlling shareholder does not

4   automatically mean that the other Individual Defendants are incapable of exercising judgment:

5   "[a] stockholder's control of a corporation does not excuse presuit demand on the board without

6   particularized allegations of relationships between the directors and the controlling stockholder

7   demonstrating that the directors are beholden to the stockholder."  *Beam ex rel.*, 845 A.2d at 1054.

8   　　　To show that the Individual Defendants are "beholden" to Zuckerberg, Plaintiffs make a

9   host of conclusory (and at times irrelevant) allegations.  *See* Compl. ¶¶ 424–63.  Courts have

10  routinely dismissed these types of arguments, which can be summed up as follows: Individual

11  Defendants have "past connections," *id*. ¶ 432, "close relationship[s]," *id*. ¶ 433, business

12  ventures, *id*. ¶¶ 436–38, and "well-established connections," *id*. ¶ 448, with Zuckerberg;

13  Individual Defendants were "funders" and "first friends," with him, *id*. ¶ 439; they are

14  "sympathetic to" him, *id*. ¶ 442; and they are afraid to "protest his decisions," *id*. ¶¶ 458–59.

15  Plaintiffs also allege that Defendant Bowles is "beholden" to the Board, because the Board granted

16  him a waiver (in compliance with Facebook's Corporate Governance Guidelines) so that he could

17  continue his service beyond the retirement age.  *Id*. ¶¶ 455–57.  All of these allegations fail,

18  because Plaintiffs fail to show that these Individual Defendants were "dominated or controlled by

19  these relationships."  *See In re Accuray, Inc. S'holder Derivative Litig.*, 757 F. Supp. 2d 919, 930

20  (N.D. Cal. 2010) (rejecting claims because shared work or educational experiences, without more,

21  are insufficient to raise a doubt as to a director's independence); *see also Beam ex rel.*, 845 A.2d at

22  1051–52 ("Mere allegations that [the directors] move in the same business and social circles, or a

23  characterization that they are close friends, is not enough to negate independence for demand

24  excusal purposes.").

25  　　　In sum, Plaintiffs have not alleged that the Individual Defendants' relationships with

26  Zuckerberg make them so "beholden" to him that they could not be independent in considering a

27  demand.  *See Rales*, 634 A.2d at 936.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### C.  Conclusion

Accordingly, the Court finds that Plaintiffs have not pled demand futility with sufficient particularity and therefore, demand was not excused.  As such, the Court **GRANTS** Facebook's motion to dismiss under FRCP 23.1 with leave to amend as to the federal claims only.

## V.      MOTION TO DISMISS UNDER FRCP 12(B)

The Individual Defendants also filed a motion to dismiss under FRCP 12(b).  Dkt. No. 70.  Because Plaintiffs' Complaint must be dismissed on *forum non conveniens* grounds as to the derivative state claims and dismissed on demand futility grounds as to the derivative federal claims, the Court does not consider the Individual Defendants' Rule 12(b)(6) arguments and **DENIES** the motion as moot without prejudice.

## VI.     MOTION TO STAY

Facebook moves to stay this litigation pending the resolution of (1) the securities class action cases against Facebook, pending in this district before the Honorable Edward J. Davila; (2) the consumer class action cases against Facebook, pending in this district before the Honorable Vince Chhabria; and (3) the FTC investigation of Facebook, all arising from the same allegations as brought here.  Dkt. No. 72.  Because Plaintiffs' Complaint is dismissed, the Court **DENIES** the motion as moot without prejudice.

## VII.    MOTION TO INTERVENE

On October 11, 2018, State Plaintiff, the plaintiff in a shareholder derivative action pending in the Delaware Court of Chancery, filed a motion to intervene to file a limited opposition to Facebook's motion to dismiss under FRCP 23.1.  Dkt. No. 84 ("Mot. Int.").  State Plaintiff claims that he would be unduly prejudiced if the motion to dismiss is granted with prejudice and requests that if the Court does so, it should dismiss without prejudice as to him.  Mot. Int. at 2.  Both Plaintiffs and Defendants oppose State Plaintiff's motion to intervene.  *See* Dkt. Nos. 96, 97.  On November 9, 2018, the City of Birmingham Relief and Retirement System, Construction and General Building Laborers' Local Union No. 79 General Fund, and Lidia Levy filed to join State Plaintiff's motion to intervene, stating that they are pursuing a consolidated books and records inspection of Facebook in Delaware and would also be potentially prejudiced if the Complaint is

dismissed with prejudice.  Dkt. 104.  For the following reasons, the Court **DENIES** the motion to intervene.

### A.    Legal Standard

FRCP 24(a) governs intervention as of right.  The rule is "broadly interpreted in favor of intervention," and requires a movant to show that

> (1) the intervention application is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest.

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (citation omitted).  Courts deciding motions to intervene as of right are "guided primarily by practical considerations, not technical distinctions."  *See id.* (citation and quotations omitted); *see also U.S. v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002) (stating that "equitable considerations" guide determination of motions to intervene as of right) (citation omitted).

FRCP 24(b) governs permissive intervention.  The Ninth Circuit has held that:

> [A] court may grant permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common . . . As with motions for intervention as of right, [a] finding of untimeliness defeats a motion for permissive intervention.

*League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997) (citation and quotations omitted and brackets in original).  "A motion for permissive intervention pursuant to Rule 24(b) is directed to the sound discretion of the district court."  *San Jose Mercury News, Inc. v. U.S. Dist. Court--N. Dist. (San Jose)*, 187 F.3d 1096, 1100 (9th Cir. 1999).

### B.    Intervention as of Right

#### i.    Significant Protectable Interest

State Plaintiff's stated "significantly protectable" interest is that he asserts claims that contain "more particularized allegations than those alleged by" Plaintiffs in this action, because he already made a books and records demand pursuant to Delaware law.  Mot. Int. at 2.  Dismissal of

1   this action with prejudice, State Plaintiff claims, "could have a preclusive effect on State

2   Plaintiff's action." *Id*.

3        Because this is a derivative action, the real party in interest is the corporation, and the

4   shareholder plaintiff is "at best the nominal plaintiff." *Ross v. Bernhard*, 396 U.S. 531, 538

5   (1970). Any remedies resulting from the action "belong to the corporation and it is bound by the

6   result of the suit." *Id*. Therefore, State Plaintiff and Plaintiffs in this action by definition have the

7   same interest. *See Tansey v. Rogers*, No. CV121049RGACONSL, 2016 WL 3519887, at *3 (D.

8   Del. June 27, 2016); *see also Arduini v. Hart*, 774 F.3d 622, 627–28 (9th Cir. 2014) (finding that

9   plaintiffs in a shareholder derivative action are in privity because the corporation is "the true party

10  in interest"); *In re Ambac Fin. Grp., Inc., Deriv. Litig.*, 257 F.R.D. 390, 393 (S.D.N.Y. 2009)

11  ("Plaintiffs and other shareholders who seek to join a derivative action as plaintiffs share an

12  identity of interest almost by definition, since the true party in interest is the corporation itself.").

13  As such, State Plaintiff has no significant protectable interest in Facebook's motion to dismiss or

14  in the outcome of the cases before this Court.

### ii.    Adequacy of Representation

16       Moreover, even if State Plaintiff could establish a significant protectable interest, he cannot

17  show inadequacy of representation. State Plaintiff contends that because he has made a demand

18  for books and records pursuant to Title 8, Section 220 of the Delaware General Corporation Law,

19  State Plaintiff will be able to file a "more fulsome pleading" than Plaintiffs, and therefore "the

20  claims in [this action] are weaker and not supported by the same facts uncovered by State

21  Plaintiff." Mot. Int. at 7.

22       State Plaintiff's contentions reflect a difference in how to strategically pursue a derivative

23  action, and do not rise to the level "of antagonism that would preclude adequate representation,"

24  because conclusory allegations and hypothetical disagreements are insufficient. *Ambac*, 257

25  F.R.D. 390 at 393. Mere differences in strategy "are not enough to justify intervention as a matter

26  of right." *City of Los Angeles*, 288 F.3d at 402–03. In a derivative action, courts have granted

27  intervention when the original plaintiff was not able to bring a claim because "the original plaintiff

28  never had proper standing or lost standing due to the continuous and contemporaneous ownership

United States District Court
Northern District of California

requirement." *Tansey*, 2016 WL 3519887, at *3.  Plaintiffs' standing is not in dispute here, and the Court finds that the State Plaintiff has not made a showing of inadequate representation.

### C.     Permissive Intervention

"District courts have discretion to permit an entity to intervene if the entity raises a claim that has a legal or factual issue or issues in common with the underlying action.  In exercising their discretion, courts must consider whether intervention will unduly delay or prejudice the existing parties." *In re Benny*, 791 F.2d 712, 722 (9th Cir. 1986) (citation omitted).

The Court declines to exercise its broad discretion to grant permissive intervention in this action.  State Plaintiff's main argument is that he believes he has a better strategy for pursuing this derivative litigation, but that is not a sufficient reason to allow him and the other proposed intervenors to join now and potentially delay this litigation.

## VIII.     CONCLUSION

The Court **GRANTS IN PART** Facebook's motion to dismiss based on *forum non conveniens*, Dkt. No. 71, and dismisses Plaintiffs' derivative state claims without leave to amend and without prejudice to reassertion of these claims in the Delaware Court of Chancery; **GRANTS** Facebook's motion to dismiss under FRCP 23.1, Dkt. No. 69, and dismisses Plaintiffs' remaining derivative federal claims with leave to amend; **DENIES AS MOOT** Individual Defendants' motion to dismiss under FRCP 12(b), Dkt. No. 70; **DENIES AS MOOT** Facebook's motion to stay, Dkt. No. 72; and **DENIES** State Plaintiff's motion to intervene, Dkt. No. 84.

Plaintiffs may amend their complaint if they are able to plead particularized allegations, on a director-by-director basis, that demonstrate that demand was futile as to the federal claims.  The Court will consider only factual, rather than conclusory, allegations when assessing the viability of any amended complaint.  Plaintiffs shall file any amended complaint within 28 days of the date of this Order.

**IT IS SO ORDERED.**

Dated:  3/22/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge

25