UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE FACEBOOK, INC. SHAREHOLDER DERIVATIVE PRIVACY LITIGATION

This Document Relates To:

ALL ACTIONS

Case No. 18-cv-01792-HSG

**ORDER DENYING PLAINTIFFS' MOTION TO LIFT DISCOVERY STAY**

Re: Dkt. No. 114

Pending before the Court is Plaintiffs' motion to lift the Private Securities Litigation Reform Act ("PSLRA") discovery stay. *See* Dkt. No. 114-1 ("Mot."). The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civ. L.R. 7–1(b). After careful consideration, the Court **DENIES** Plaintiffs' motion to lift the stay.

**I.   BACKGROUND**

The Court assumes familiarity with the facts and briefly recounts the factual and procedural history relevant to the present motion. Plaintiffs bring this consolidated shareholder derivative action against nominal Defendant Facebook and individual Defendants for claims related to Facebook's data privacy protection policies and practices, in the wake of the revelation that Cambridge Analytica misappropriated millions of Facebook users' information for use in political campaigns. *See* Dkt. No. 56 ("Compl.") ¶¶ 1–15. Before filing the operative complaint, Plaintiffs did not make a demand on the Board, nor did they make a books and records demand under § 220 of Delaware General Corporation Law. *See id*. ¶ 378.

In July 2018, the Court held that the PSLRA automatic discovery stay applied to this case, because the derivative complaint asserted federal claims under the Securities Exchange Act. Dkt. No. 65. The Court rejected Plaintiffs' argument that they would suffer undue prejudice if the

1  Court did not lift the PSLRA discovery stay. *Id*. at 2. Two months later, Plaintiff Natalie
2  Ocegueda made a books and records demand under § 1601 of the California Corporations Code in
3  California State Superior Court ("State Court Action"). *See* Dkt. No. 93-3. Defendants filed a
4  motion to stay the inspection of Facebook's corporate books and records, which the Court granted
5  in February 2019. *See* Dkt. No. 111. In doing so, the Court found that the Securities Litigation
6  Uniform Standards Act of 1998 ("SLUSA") permitted the Court to stay discovery proceedings in
7  the State Court Action, and that the relevant considerations weighed in favor of doing so. *Id*. at 3.

On March 22, 2019, the Court granted Defendants' motions to dismiss and dismissed all of Plaintiffs' derivative state claims without prejudice to reassertion in the Delaware Court of Chancery. Dkt. No. 113. The Court upheld the enforceability of an exclusive forum selection clause, making the Delaware Court of Chancery the exclusive forum for a derivative action. *Id*. at 7–12. But because the Delaware Court of Chancery did not have jurisdiction over Plaintiffs' federal securities claims, the Court separately addressed those claims and found that Plaintiffs failed to plead demand futility under FRCP 23.1. *Id*. at 12–22. The Court therefore dismissed the federal securities claims, but gave Plaintiffs an opportunity to amend their complaint to plead particularized allegations demonstrating that demand was futile. *Id*. at 25.

Plaintiffs then filed this motion requesting that the Court lift the PSLRA discovery stay in light of its order granting Defendants' motions to dismiss. *See generally* Mot. According to Plaintiffs, "circumstances [ ] changed" in the less than two months between the Court's order staying the State Court Action and the filing of their motion, which purportedly warrants lifting the PSLRA discovery stay. *Id*. at 1.

## II. DISCUSSION

As an initial matter, the Court notes that Plaintiffs are not clear as to the contours of the relief they seek. Their motion claims to request "limited relief from the stay of discovery under the [PSLRA]" to "aid in pleading demand futility." Mot. at 1. Under this theory, Plaintiffs seek "[m]any, if not all, of the requested records" that were "produced by Facebook to plaintiffs in related litigation, including substantially similar derivative actions and inspection demand enforcement proceedings in the Delaware Court of Chancery." *Id*. at 2. But Plaintiffs also

contend that they have an independent right to the "specified corporate records of Facebook" requested in the State Court Action, which the Court already stayed under the SLUSA. *See* Mot. at 14; Dkt. No. 111. Notably, Defendants argue that the documents requested in the State Court Action are different than and go "far beyond anything that has been produced by Facebook to any shareholder." Dkt. No. 118 ("Opp.") at 8. Thus, it is not entirely clear to the Court what specific materials Plaintiffs seek. Further, Plaintiffs are inconsistent as to whether they are relying on Delaware or California law for the proposition that they have an independent right to a books and records inspection, even with a PSLRA stay in place.

In an effort to avoid confusion, the Court separates Plaintiffs' apparent theories and analyzes each one independently. For the reasons discussed below, the Court finds that regardless of the theory on which Plaintiffs purport to proceed, they have failed to establish that the Court should lift the PSLRA discovery stay so that they can obtain either documents produced by Facebook to other litigants, or the documents requested in their State Court Action.

### A. Documents Produced in Other Proceedings

The Court first addresses what it construes as Plaintiffs' request to lift the PSLRA discovery stay so that they can obtain documents produced to "a half-dozen other Facebook stockholders." *See* Mot. at 10.

Under the PSLRA, "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. § 78u-4(b)(3)(B); *SG Cowen Sec. Corp. v. U.S. Dist. Court for N. Dist. of CA*, 189 F.3d 909, 912–13 (9th Cir. 1999) ("[D]iscovery should be permitted in securities class actions only after the court has sustained the legal sufficiency of the complaint."). While the Ninth Circuit has not directly addressed the applicability of the PSLRA automatic discovery stay to derivative actions, courts in this circuit have found that the PSLRA does stay discovery in derivative actions alleging violations of federal securities laws. *See, e.g., In re Asyst Techs., Inc. Derivative Litig.*, No. C-06-04669 EDL, 2008 WL 916883, at \*2 (N.D. Cal. Apr. 3, 2008); *In re Countrywide Fin. Corp. Derivative Litig.*, 542 F. Supp. 2d 1160, 1179–80 (C.D. Cal. 2008); *In re Marvell Tech.*

1  *Group, Ltd. Deriv. Litig.,* No. C–06–03894 RMW, 2007 WL 1545194, at *2 (N.D. Cal. May 29, 2007); *In re Altera Corp. Deriv. Litig.,* No. C 06–03447 JW, 2006 WL 2917578 (N.D. Cal. Oct. 11, 2006); *Melzer v. CNET Networks, Inc.,* No. C 06–03817 WHA, 2006 WL 3716477, at *2 (N.D. Cal. Dec. 15, 2006).

Here, Plaintiffs essentially repackage the arguments from their first motion seeking to lift the PSLRA discovery stay. They again argue that they will suffer undue prejudice because they are at an "increasing information disadvantage in relation to other interested parties" to whom Defendants "already produced documents and information." Mot. at 6–9; *see also* Dkt. No. 60 at 4–6 (prior motion arguing that Plaintiffs would be at a disadvantage "if denied access to documents produced to other plaintiffs and government investigators"). The Court already rejected that argument, Dkt. No. 65 at 2, and finds that Plaintiffs present no reason to hold otherwise now.

Defendants cite numerous cases from this circuit recognizing that an "informational disadvantage," without more, does not justify lifting a PSLRA discovery stay. *See* Opp. at 6 (citing *Avila v. LifeLock Inc.*, No. CV-15-01398-PHX-SRB, 2016 WL 7799624, at *2 (D. Ariz. Apr. 22, 2016); *Asyst Techs.*, 2008 WL 916883, at *2; *Countrywide*, 542 F. Supp. 2d 1180 n. 29; *In re Am. Funds Sec. Litig.*, 493 F. Supp. 2d 1103, 1106 (C.D. Cal. 2007)). Plaintiffs fail to distinguish these cases in any meaningful way. Instead, they argue that the cited cases are inapposite because none of those plaintiffs were "granted leave to amend their complaint for purposes of repleading demand futility." Dkt. No. 119 ("Reply") at 9.

The Court is not persuaded. That Plaintiffs are seeking discovery for purposes of repleading demand futility weighs *against* a finding that the PSLRA discovery stay should be lifted. *See SG Cowen*, 189 F.3d at 913 ("Thus, as a matter of law, failure to muster facts sufficient to meet the Act's pleading requirements cannot constitute the requisite 'undue prejudice' to the plaintiff justifying a lift of the discovery stay under § 78u–4(b)(3)(B)."). In essence, Plaintiffs seek to "uncover facts sufficient to satisfy the Act's pleading requirements," which is "not a

4

permissible reason for lifting the discovery stay."[1] *See id.* at 912. Congress's attempt to address discovery abuse through the PSLRA "would be rendered meaningless" if Plaintiffs could circumvent the stay simply by dressing up a securities action as a derivative one. *See id.* at 913 n.1.

Accordingly, Plaintiffs have not established that they will be unduly prejudiced so as to justify lifting the PSLRA discovery stay to allow them to obtain documents produced to other litigants in related proceedings.[2]

### B. Books and Records Inspection

The Court next addresses what it construes as Plaintiffs' alternative theory that they are entitled to a books and records inspection independent of and separate from discovery. Mot. at 11–14; Reply at 1, 9. To start, Plaintiffs are hazy as to whether they are seeking a books and records inspection under Delaware or California law. In Plaintiffs' opening motion, they argue their "right of inspection" is "deeply rooted in common law and codified in Section 1601" of the California Corporations Code. Mot. at 12–14. But they primarily cite Delaware case law, and also claim that they have a right to obtain Facebook's "'books and records in order to better allege demand futility' under applicable Delaware law." Mot. at 14 (citation omitted). Then in their reply brief, Plaintiffs argue that the Court should not "prevent a lawful inspection that is authorized by a California statute and is also proper under Delaware law, to aid in pleading

---

[1] The Court recognizes that at least one court in this district considered the demand futility analysis distinguishable from a sufficiency of the complaint analysis. *See Melzer*, 2006 WL 3716477, at *4. The demand futility inquiry is slightly different in that it asks whether a plaintiff has standing to step into the shoes of the board to protect the interests of the corporation. *In re Silicon Graphics Inc. Secs. Litig.*, 183 F.3d 970, 989 (9th Cir. 1999). In this case where only federal securities claims remain, the analysis substantially overlaps, as both standards require Plaintiffs to plead particularized facts establishing what statements were false or misleading, why those statements were materially false or misleading, and how each Defendant had scienter. *See* Dkt. No. 113 at 19–20; *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 889 (9th Cir. 2009).

[2] Delaware law (which governs the substantive demand futility analysis here) also recognizes the need to prevent fishing expeditions before a plaintiff meets the applicable pleading standards. *See Scattered Corp. v. Chicago Stock Exch., Inc.*, 701 A.2d 70, 77 (Del. 1997), *overruled on other grounds, Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). A plaintiff is not entitled to discovery to "assist their compliance with the particularized pleading requirement of Rule 23.1," as a plaintiff's standing to sue in a derivative suit "must be determined on the basis of the well-pleaded allegations of the complaint." *Id.*

5

demand futility."[3]  *See* Reply at 8.

Fundamentally, what Plaintiffs appear to request is for the Court to lift the SLUSA stay so they can obtain the documents requested in the State Court Action. The Court finds that Plaintiffs are not permitted to do so, under either Delaware or California law.

### i. Delaware Law

Section 220 grants a stockholder of a Delaware corporation the right to inspect that corporation's books and records. *King v. VeriFone Holdings, Inc.*, 12 A.3d 1140, 1145 (Del. 2011). This right is not absolute, and the stockholder must demonstrate "a proper purpose for making such a demand." *Id*. A proper purpose is defined as "a purpose reasonably related to such person's interest as a stockholder." 8 Del. C. § 220. The Supreme Court of Delaware has found a proper purpose when a plaintiff seeks a § 220 books and records inspection to aid in pleading demand futility, even after a plaintiff has filed a derivative complaint. *King*, 12 A.3d at 1146. California federal courts applying Delaware law in derivative actions have followed this approach, though none of these cases involved a PSLRA discovery stay. *See Oswald v. Humphreys*, 2016 WL 6582025 (N.D. Cal. Nov. 7, 2016); *In re Verifone Holdings, Inc. S'holder Derivative Litig.*, No. C 07-06347 MHP, 2009 WL 1458233 (N.D. Cal. May 26, 2009).

As an initial matter, Plaintiffs did not make a § 220 books and records demand under Delaware law. Plaintiffs acknowledge that other Facebook shareholders have initiated a § 220 demand in Delaware, but Plaintiffs seek the documents they themselves requested in the State Court Action. *See* Mot. at 4. Nonetheless, even if the Court were to construe Plaintiffs' § 1601 action as a § 220 demand, Plaintiffs still have not demonstrated that the books and records inspection in the State Court Action was for a "proper purpose" under Delaware law.

Courts have held that a § 220 books and records inspection is not necessarily a discovery demand. *See, e.g.*, *Am. Bank v. City of Menasha*, 627 F.3d 261, 265 (7th Cir. 2010) (citing *Saito v.*

---

[3] Plaintiffs are inconsistent in invoking or distinguishing Delaware law, depending on whether it is to their advantage to do so. *Compare* Reply at 6–8, 13–14 (citing cases that address § 220 and demand futility under Delaware law as support for why the Court "should permit Plaintiffs to complete this inspection proceeding in the California State Court") *with id*. at 14 (distinguishing relevant Delaware cases because they do not "address the procedural issues and other matters of federal law that are raised by and relevant to this Motion").

*McKesson HBOC, Inc.*, 806 A.2d 113, 114–15 (Del. 2002)). Even so, Delaware courts recognize that a plaintiff may try to initiate a § 220 demand in "bad faith to circumvent the PSLRA." *Beiser v. PMC-Sierra, Inc.*, No. CIV. A. 3893-VCL, 2009 WL 483321, at *3 (Del. Ch. Feb. 26, 2009); *see also Cohen v. El Paso Corp.*, No. CIV.A. 551-N, 2004 WL 2340046, at *2–3 (Del. Ch. Oct. 18, 2004) ("Conflict between the PSLRA with [sic] § 220 will potentially arise only when the § 220 action is seeking records that pertain directly to a federal securities law claim asserted in a pending federal action . . ."). Accordingly, Delaware courts have implemented the following safeguards for a books and records inspection to proceed "in the face of a PSLRA mandated stay of discovery": "(1) the plaintiff was not currently involved in the federal action, (2) the plaintiff's counsel was not currently involved in the federal action, and (3) the plaintiff agreed to enter a confidentiality agreement preventing him from sharing the information obtained with the plaintiff or counsel in the federal action." *Beiser*, 2009 WL 483321, at *3.

As the Court already found in its order staying the State Court Action, the first two safeguards are not present here. Dkt. No. 111 at 3 ("Ms. Ocegueda is both petitioner in the State Court Action and Plaintiff in this case, and is represented by the same counsel in both actions."). And Plaintiffs do not dispute that Ms. Ocegueda refused to enter into a standard confidentiality agreement. *See* Dkt. No. 118-1, Declaration of Brian M. Lutz ¶ 4; *see* Reply at 15. Therefore, even if Plaintiffs had made a formal § 220 books and records demand (and they did not), given that none of these safeguards are present, Plaintiffs fail to persuade the Court that any request for a books and records inspection under Delaware law would not be simply an effort to bypass the PSLRA discovery stay. *Cf. Cohen*, 2004 WL 2340046, at *3 (no indication that plaintiff's § 220 action was for the improper purpose of circumventing the PSLRA discovery stay because all the safeguards were present).

Plaintiffs' cited cases are inapposite. *See* Reply at 13 (citing *Oswald*, 2016 WL 6582025; *Verifone*, 2009 WL 1458233; *King*, 12 A.3d 1140). *Oswald*, *Verifone*, and *King* did not allege any federal securities claims, and thus a PSLRA discovery stay did not apply to those actions. *See Oswald*, 2016 WL 6582025, at *1 (alleging breach of fiduciary duties and corporate waste); *Verifone*, 2009 WL 1458233, at *3 (alleging breach of fiduciary duties, corporate waste, and

7

unjust enrichment); *King*, 12 A.3d 1142 (same).[4] Plaintiffs also fare no better by citing *Turocy v. El Pollo Loco*, No. SACV151343DOCKESX, 2017 WL 2495172 (C.D. Cal. May 10, 2017) and *Kococinski v. Collins*, 935 F. Supp. 2d 909 (D. Minn. 2013). *See* Mot. at 8–14. In *Turocy*, the district court lifted the PSLRA discovery stay so the plaintiffs could obtain § 220 materials the defendant produced in a different derivative action proceeding in Delaware (in which the plaintiffs were not participating). *Turocy*, 2017 WL 2495172, at *2. "Of note," the plaintiffs were not involved in the books and records action, which is not the case here. *See id*. at *1. In *Kococinski*, an out-of-circuit case applying Minnesota law, the district court did not address whether a plaintiff may proceed with a books and records inspection when a PSLRA stay is in place. The court in passing commented that it "urge[d] [plaintiff] to consider exercising her statutory right to examine [defendant's] books and records in order to potentially bolster her allegations." *Kococinski*, 935 F. Supp. 2d at 911 n.1. Accordingly, these cases do not support Plaintiffs' argument that they would be entitled to a books and records inspection under Delaware law notwithstanding a PSLRA-mandated discovery stay.[5]

### ii. California Law

As noted earlier, Plaintiffs chose not to pursue inspection of Facebook's books and records under Delaware law. Instead, Plaintiffs sought inspection of Facebook's books and records under § 1601 of the California Corporations Code. Section 1601 provides a shareholder with the right to

---

[4] The Delaware Supreme Court in *King* distinguished *Beiser* on the basis that in *Beiser*, the court in the parallel derivative action did not grant leave to amend, "so any Section 220 inspection would have been an empty excuse." *King*, 12 A.3d at 1149. *King* did not address *Beiser*'s holding with respect to the PSLRA stay. Instead, the Delaware Supreme Court acknowledged the uncertainty in the law concerning § 220 actions and a PSLRA discovery stay. *Id*. at 1144 n.13 ("Under the current state of the federal case law … [i]t is unclear whether the [PSLRA] … also applies to *derivative* actions. The few courts that have applied … the PSLRA [discovery stay] to derivative actions have primarily done so where the action also includes a class action security fraud claim." (citing *In re Openwave Sys. Inc. S'holder Derivative Litig.*, 503 F. Supp. 2d 1341, 1351 (N.D. Cal. 2007))).

[5] The Ninth Circuit has not addressed the interplay between a § 220 demand and a PSLRA stay in a parallel derivative action. In the absence of any directly-applicable binding precedent, the Court need not definitively decide whether the federal rules require the Court to lift the PSLRA discovery stay whenever confronted with a § 220 demand, even if the safeguards articulated in *Beiser* are present. The Court here is simply noting that even if it were to analyze Plaintiffs' State Court Action as a § 220 books and records demand, Plaintiffs still fail to persuasively argue that they are entitled to those documents under Delaware law.

8

inspect and copy "[t]he accounting books, records, and minutes of proceedings of the shareholders and the board and committees of the board of any domestic corporation, and of any foreign corporation keeping any records in this state …." Cal. Corp. Code § 1601(a)(1). "Section 1601 affords 'no more than a right to inspect and copy records at the company office' and does not 'impose on the corporation an affirmative duty to respond to written requests for modes of disclosure falling outside the scope of the statute.'" *Singhania v. Uttarwar*, 136 Cal. App. 4th 416, 431 (2006) (citation omitted).

There is a dearth of caselaw addressing the interplay between a § 1601 action and a parallel case involving a PSLRA discovery stay, or even caselaw discussing whether a plaintiff may proceed with a § 1601 action to assist in pleading demand futility.[6] The Court presumes this is why Plaintiffs invoke Delaware law for the proposition that they are allowed to "enforce their statutory right of inspection" in the State Court Action. *See* Reply at 14. In the absence of any applicable authority, the Court turns to Delaware law for guidance, given the similarity of the issues and recognizing that Delaware law governs the substantive demand futility analysis in this case. If the Court were to apply the equivalent analytical framework under Delaware law to determine whether California law authorizes an independent § 1601 action, for the reasons already discussed, the Court would reach the same conclusion in finding that Plaintiffs fail to establish that the inspection they seek is not simply an effort to circumvent the PSLRA discovery stay.

The Court also may continue to stay the State Court Action under SLUSA. *See* Dkt. No. 111. Under SLUSA, upon a "proper showing," a federal court may "stay discovery proceedings in any private action in a State court as necessary in aid of its jurisdiction, or to protect or effectuate its judgments, in an action subject to a stay of discovery pursuant to this paragraph." 15 U.S.C. § 78u-4(b)(3)(D). Here, Plaintiffs essentially ask the Court to reconsider its previous holding staying the State Court Action. But Plaintiffs fail to proffer any convincing argument to persuade the Court to reconsider, as the Court finds that continuing to stay the books and records inspection

---

[6] The one California case Plaintiffs cite for the proposition that California courts "have distinguished shareholder inspection rights from discovery" is from 1939, and thus understandably does not address § 1601, demand futility, or PSLRA discovery stays. *See* Reply at 5 (citing *Austin v. Turrentine*, 30 Cal. App. 2d 750, 756–57 (1939)).

9

is consistent with the purpose of SLUSA.

Although Plaintiffs cite *American Bank* as support for their argument, the Court finds that case distinguishable. As Judge Posner explained in *American Bank*, the purpose of SLUSA is to "prevent settlement extortion—using discovery to impose asymmetric costs on defendants in order to force a settlement advantageous to the plaintiff regardless of the merits of his suit." *Am. Bank*, 627 F.3d at 263 (citations omitted). But that purpose is "thwarted if the plaintiff in a federal securities suit, by filing a parallel suit in state court under state [ ] law against the same defendant that he had sued in federal court, could use state discovery procedure to impose the very burdens on the defendant" the PSLRA sought to prevent. *Id*. (citations omitted). With this purpose in mind, the Seventh Circuit found that a request for public records under Wisconsin's public-records law entitled a private securities plaintiff to those records, even when a PSLRA discovery stay was in place. *Id*. at 266–67. The circuit court found significant that under Wisconsin's public-records law, the requestor and not the defendant would incur the costs associated with responding to requests for public records, thereby alleviating concerns of settlement extortion. *Id*. at 266–67.

In contrast, Defendants here would incur substantial expense in producing the documents in the State Court Action. Plaintiffs' proffered explanation for why Defendants would have no burden is that "Facebook's obligation to permit inspection arises from Section 1601 and *not* from any discovery process." Reply at 11. The Court finds that argument unavailing. Unlike the public-records law in *American Bank*, § 1601 has no provision authorizing Defendants to shift the costs of production to Plaintiffs. And as the Court found in its prior order, the "sheer scope of Plaintiff's discovery request," which seeks twenty-four categories of documents, including emails, and which the Superior State Court suggested is overbroad, "places a substantial burden on Defendant."[7] Dkt. No. 111 at 3; *see* Dkt. No. 118-2, Ex. 1; Dkt. No. 118-3, Ex. 2. For at least these reasons, *American Bank* does not support Plaintiffs' request.

---

[7] Plaintiffs are vague as to whether they request all twenty-four categories of documents or just the fourteen listed in Dkt. No. 114-2, Exhibit F. *See* Mot. at 14 n.5 ("In any event, Plaintiffs identify the particular requests in the inspection demand that are likely to address the Court's concerns in its dismissal order." (citing Ex. F)). But Plaintiffs do not clarify whether those fourteen are the only categories of documents now requested. Either way, the Court's conclusion is the same.

The Court will not elevate form over substance. In short, whatever theory Plaintiffs are pursuing, they fail to establish that any books and records inspection they seek under Delaware or California law is not for the improper purpose of circumventing the PSLRA discovery stay.

### III. CONCLUSION

The Court **DENIES** Plaintiffs' motion to lift the PSLRA discovery stay. Plaintiffs are directed to file their amended complaint within 21 days of the date of this order.

**IT IS SO ORDERED.**

Dated: 11/12/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge